782 N.E.2d 1000 (2003)
Donald G. RICE, Jr., Jacqueline V. Rice, Cal.-Ind. Properties, Inc., Appellants-Defendants,
v.
COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Appellee-Plaintiff.
No. 35A02-0203-CV-249.
Court of Appeals of Indiana.
January 31, 2003.
*1001 David M. Henn, Stowers, Weddle & Henn PC, Indianapolis, IN, Attorney for Appellants.
Steve Carter, Attorney General of Indiana, Timothy J. Junk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellants-Defendants, Donald Rice, Jr. (Rice), Jacqueline Rice, and Cal.-Ind. Properties, Inc. (Cal.-Ind.) (collectively "Appellants"), appeal the trial court's denial of their motion to set aside its judgment in favor of the Indiana Department of Environmental Management (IDEM) on IDEM's Complaint to Avoid Fraudulent Conveyances.
We affirm.

ISSUE
Appellants raise one issue for our review, which we restate as follows: whether the Huntington Superior Court erred in denying their Motion to Set Aside Judgment.

FACTS AND PROCEDURAL HISTORY
Rice owned and operated three small water and sewer utilities that serviced various subdivisions located in Allen County and Huntington County, Indiana. IDEM regulated Rice's utilities pursuant to state and federal environmental laws and regulations. When Rice failed to operate his utilities in compliance with these laws, IDEM engaged its administrative enforcement process. When those proceedings failed to bring Rice into compliance, IDEM sought judicial intervention in the Allen Superior Court. In that action, IDEM named Rice as a defendant and his three utilitiesEstates Utilities, Inc.; Arlington Utilities, Inc.; and Havenwood Utilities. On April 24, 1994, the Allen Superior Court entered an Agreed Preliminary Injunction mandating Rice to take specific actions to bring the operation of his utilities into compliance.
Rice's continued disregard of regulatory requirements, resulting in numerous violations of the injunction, caused IDEM to file three contempt actions during the years following the injunction in Allen *1002 County. On January 26, 1999, Rice and his utilities were found to be in contempt of Allen County's injunction and ordered to pay IDEM. As of August 20, 1999, Rice owed IDEM more than $121,336 in civil penalties (the "Allen County Judgment"), for which he was jointly and severally liable with the utilities.[1]
Prior to 1996, Rice owned approximately thirty-nine residential lots in a Huntington County subdivision. In May of 1996, Rice transferred the lots to a company known as Cal.-Ind. for the sum of One Dollar. Cal.-Ind. is a company owned entirely by Rice's son, Donald Rice, III (Donnie). In Rice's deposition held on August 5, 1999, Rice stated that the consideration for the transfer was the fact that Cal.-Ind. assumed the mortgage payments on the lots. However, in Donnie's deposition held the same day, Donnie testified that Cal.-Ind. was not making the mortgage payments on the lots, and that he did not know who was making the payments.
Based on these facts, IDEM filed a Complaint to Avoid Fraudulent Conveyances (Complaint) in the Huntington Superior Court on September 29, 1999, naming as defendants: Rice, his wife Jacqueline, and Cal.-Ind. IDEM alleged in its complaint that it held a "claim" against Rice under Ind.Code § 32-2-7-3, and that IDEM was a "creditor" under I.C. § 32-2-7-4. IDEM's Complaint contained two counts: the first count pertained to the actual transfer of the lots, and the second count addressed Rice's mortgage payments after the transfer.
On April 25, 2000, after the parties filed cross-motions for summary judgment on the Complaint, the Huntington Superior Court entered its Order and Judgment on the Motion and Cross Motion for Summary Judgment. Huntington County's judgment contained an extensive recitation of the parties' Allen County litigation as well as findings of fact regarding the transfer of the lots. Specifically, the Huntington Superior Court found: 1) based on Donnie's testimony, as well as Cal.-Ind.'s tax returns, Cal.-Ind. never made any payments on the mortgaged lots; 2) all post-transfer mortgage payments were made by Rice via "a corporate shell known as Summit Sales;" and 3) the transfer of the lots rendered Rice insolvent. (Appellee's Appendix p. 47). Based on these findings, the Huntington Superior Court concluded that because "Rice did not receive reasonably equivalent value for his continued mortgage payments after the 1996 land transfer," his post-transfer payments on the mortgages were a fraudulent conveyance as to Rice's individual creditors, such as IDEM. (Appellee's App. p. 51).
Accordingly, the Huntington Superior Court entered judgment for IDEM under Count II of its Complaint[2], stating, inter alia: "This Court grants [IDEM] summary judgment as to Count II of the Complaint and ORDERS that the Department's civil penalty judgment and the Attorney General's attorney's fees are a judgment against Cal.-Ind. in the amount of $88,146.25, plus pre-judgment and post judgment interest at the rate of 8 percent." (Appellee's App. p. 52).
Eighteen months later, on November 8, 2001, Appellants filed a motion to set aside Huntington County's judgment, stating:

*1003 Defendants, pursuant to T.R. 60, move to set aside this Court's April 25, 2000 judgment in favor of [IDEM] and against Defendants herein for lack of subject matter jurisdiction under the provisions of Indiana Trial Rule 69(E) governing proceedings supplemental. On the same legal grounds, Defendants move to dismiss this action pursuant to Indiana Trial Rule 12(B)(1).
(Appellant's App. p. 78). The Huntington Superior Court summarily denied Rice's motion to set aside on February 19, 2002. This appeal ensued.

DISCUSSION AND DECISION
Appellants claim that Huntington County's judgment is void because the Huntington Superior Court did not have jurisdiction over IDEM's fraudulent conveyance action. Appellants predicate their argument on Ind. Trial Rule 69(E), claiming that IDEM's action was, in effect, a proceeding supplemental that could only be heard by the trial court that issued the underlying judgment, i.e. the Allen Superior Court. Thus, according to Appellants, the Huntington Superior Court erred in denying their motion to set aside.[3] Conversely, IDEM maintains that the motion to set aside was merely a pretext for obtaining a belated appeal of Huntington County's judgment. Moreover, IDEM asserts that it could pursue satisfaction of Allen County's judgment either by proceedings supplemental in the Allen Superior Court, or by domesticating Allen County's judgment in the Huntington Superior Court and then pursuing satisfaction there.
Normally, we employ an abuse of discretion standard in reviewing a trial court's ruling on a motion to set aside. Hotmix & Bituminous Equipment Inc. v. Hardrock Equipment Corp., 719 N.E.2d 824, 826 (Ind.Ct.App.1999). "However, the standard of review for the granting of a motion for relief from judgment made pursuant to Trial Rule 60(B)(6), alleging that the judgment is void, requires no discretion on the part of the trial court because either the judgment is void or it is valid." Id. To prevail under T.R. 60(B)(6), therefore, Appellants must demonstrate that Huntington County's judgment is void and not merely voidable. As Chapin v. Hulse, 599 N.E.2d 217, 220 (Ind.Ct.App.1992), explains:
The distinction between the terms "void" and "voidable" is critical in this context. That which is "void" has no legal effect at any time and cannot be confirmed or ratified by subsequent action or inaction. That which is "voidable" has legal effect until such time as challenged in the appropriate manner and can be ratified or confirmed by subsequent action or inaction. A judgment (or appealable order) that is voidable may only be attacked through a direct appeal, whereas a void judgment is subject to collateral attack.
Id. Thus, if we find Huntington County's judgment to be merely voidable, as opposed to void, the Appellants' only recourse was through a direct appeal and not through a motion to set aside. Id.
In the present case, Appellants assert that the Allen Superior Court, as the court issuing the underlying judgment, was the only court with jurisdiction to hear the fraudulent conveyance action. As support, Appellants cite to T.R. 69(E): "Proceedings supplemental to execution. Notwithstanding any other statute to the contrary, proceedings supplemental to execution *1004 may be enforced by verified motion or with affidavits in the court where the judgment is rendered." Indeed, as Appellants correctly note, proceedings supplemental may be filed only in the trial court issuing the underlying judgment. See Borgman v. Aikens, 681 N.E.2d 213, 217 (Ind.Ct.App.1997) ("Although the use of the word `may' can create uncertainty about the proper court in which to file the action, the Civil Code Study Commission has interpreted the rule to specifically mean that the court rendering the underlying judgment retains jurisdiction over any proceedings supplemental.").[4]
A proceedings supplemental, then, is merely a procedure designed to procure payment of a judgment when execution against the property of the judgment debtor is returned unsatisfied, in whole or in part. Pursuant to I.C. § 34-55-8-1:
If an execution against the property of the judgment debtor or any of several debtors in the same judgment is returned unsatisfied, in whole or in part, the judgment creditor, after the return is made, is entitled to an order to be issued by any circuit, superior, or city court in the jurisdiction to which the execution issued that requires the judgment debtor to appear before the court to answer concerning the judgment debtor's property, income, and profits within the county to which the execution was issued.
Thus, proceedings supplemental require the judgment debtor to appear before the trial court that issued the underlying judgment to answer as to any and all non-exempt property in his possession. National Mut. Ins. Co. v. Sparks, 647 N.E.2d 375, 377 (Ind.Ct.App.1995). It does not constitute a separate and independent action. Id. at 377. "Under Indiana law, the only issue presented in proceedings supplemental is that of affording the judgment-creditor relief to which she is entitled under the terms of the judgment." Id. As such, proceedings supplemental has its origins in equity, as a remedy "to the creditor for discovering assets, reaching equitable and other interest not subject to levy and sale at law and to set aside fraudulent conveyances." Stuard v. Jackson & Wickliff Auctioneers, Inc., 670 N.E.2d 953, 955 (Ind.Ct.App.1996).
On the other hand, an action to set aside a fraudulent conveyance is governed by I.C. § 32-18-2 et seq. Pursuant to I.C. § 32-18-2-14, a debtor's conveyance of property is fraudulent as to a creditor if the debtor made the transfer with actual intent to defraud the creditor, or without receiving a reasonably equivalent value in exchange for the transfer. Fraudulent conveyance actions "have for their sole purpose the removal of obstacles which prevent the enforcement of the judgment" and are "`in essence an equitable execution comparable to proceedings supplementary to execution.'" Beavans v. Groff, 211 Ind. 85, 5 N.E.2d 514, 516 (Ind. 1937) (citation omitted). An action to set aside a fraudulent conveyance does not negate the disputed transaction; its only effect is to subject the conveyed property to execution "as though it were still in the name of the grantor." Id.
An action to set aside a fraudulent conveyance, like proceedings supplemental, sounds in equity, not in tort. Id. at 517. Both procedures are equitable remedies designed to subject the debtor's property to execution by his creditor. "Both the statutory proceeding supplemental to execution and [fraudulent conveyance actions] *1005 operate in rem. The judgment creditor may not pursue the same property in repeated proceedings, but he may have different property made subject to his judgment by successive proceedings." Id. Thus, proceedings supplemental and motions to set aside fraudulent conveyances are both equitable remedies available to frustrated creditors, such as IDEM in the present action.
For this reason, and contrary to Appellants' contention, the cases that have analyzed the propriety of filing a proceedings supplemental in the court issuing the underlying judgment, as opposed to initiating a separate fraudulent conveyance action, have consistently found either mechanism an appropriate method for achieving the same goal, i.e. satisfaction of a judgment. Stuard, 670 N.E.2d at 954-55. See also McCarthy v. McCarthy, 156 Ind.App. 416, 297 N.E.2d 441, 445 (Ind.Ct.App.1973) ("We do not here hold that [a proceeding supplemental] is mandatory and that filing a separate action in a separate court under a separate cause number is prohibited."). Indeed, a judgment creditor may file successive actions in successive courts, if necessary, to reach a sufficient amount of debtor's property. Beavans, 5 N.E.2d at 516 ("He was entitled to successive executions against the property of his judgment debtors, in different counties, until his judgment was fully paid, after which he was entitled to no further executions."). Therefore, contrary to Appellants' assertion, proceedings supplemental was not the only avenue open to IDEM in its quest to satisfy the judgment against Rice.
Here, the single most salient fact is that the property alleged to have been fraudulently conveyed was located in Huntington County, not Allen County. I.C. § 34-55-8-1 limits the scope of inquiry in proceedings supplemental to "the judgment debtor's property, income, and profits within the county to which the execution was issued." Thus, proceedings supplemental in the Allen County court would not have reached the lots situated in Huntington County. Indeed, Huntington County was the county of preferred venue pursuant to T.R. 75(A)(2) ("the county where the land or some part thereof is located ... if the complaint includes a claim ... to avoid or set aside conveyances ..."). Further, IDEM had no need for the discovery mechanisms afforded by proceedings supplemental; it already knew about Rice's Huntington County property. For these reasons, we find no error in IDEM having pursued its fraudulent conveyance action in the Huntington Superior Court instead of the Allen Superior Court.
Likewise, Appellants take nothing by way of their argument that they have been subjected to multiple judgments on the same claim. First, Allen County's judgment is against Rice and his utilities, while Huntington County's judgment is against Cal.-Ind., only. Secondly, as explained in Beavans, a judgment creditor is "entitled to successive executions against the property of his judgment debtors, in different counties, until his judgment was fully paid, after which he was entitled to no further executions." 5 N.E.2d at 516. If, and when, IDEM's judgment has been fully satisfied, Appellants may properly utilize the affirmative defense of payment should there be any subsequent collection attempts. See T.R. 8(C); Wright Mfg. Corp. v. Scott, 172 Ind.App. 154, 360 N.E.2d 2, 11 (Ind.Ct.App.1977) (Payment is an affirmative defense in action seeking damages for breach of oral contract.).
As the above discussion makes clear, the Huntington Superior Court had jurisdiction to entertain IDEM's fraudulent conveyance action. Its judgment, therefore, was neither void nor voidable, and we find no error in the trial court's denial of Appellants' *1006 motion to set aside. See Chapin, 599 N.E.2d at 220.
Affirmed.
MATTINGLY-MAY and ROBB, JJ., concur.
NOTES
[1] Rice was held jointly and severally liable, as a responsible corporate officer, for the utilities' violations.
[2] The Court did not find the actual conveyance of the lots to be fraudulent as to Rice's creditors because Rice had owned the lots jointly with his wife, and "[a] creditor of one spouse cannot assert a claim against entireties property." (Appellee's App. p. 50). Neither party disputes this conclusion of law.
[3] Nowhere in Appellants' Brief, nor in the record on appeal, do Appellants explain the specific subsection of T.R. 60(B) under which they are proceeding. We assume that they rely on T.R. 60(B)(6), which provides relief when a trial court's judgment is void.
[4] The Appellants' reliance on Borgman is irrelevant, however, as IDEM did not file proceedings supplemental in any court, let alone the wrong court.