**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY,** Appellant–Proposed Intervener,

v.

**Ruth ESTEP, Personal Representative of the Estate of Ewing Dan Estep and Assignee of Rights of James D. Perkins, Appellee–Plaintiff.**

No. 03A01–0401–CV–30.

Court of Appeals of Indiana.

Nov. 24, 2004.

Karl L. Mulvaney, Dennis F. Cantrell, Nana Quay–Smith, Candace L. Sage, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellant.

Peter Campbell King, J. Kevin King, Cline King & King, P.C., Columbus, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

While operating his motorcycle, Dan Estep (Estep) was struck by a truck being driven by James D. Perkins. Estep suffered devastating injuries that rendered him quadriplegic. At the time of the accident, Perkins was covered by an auto insurance policy issued by State Farm Insurance Company. Estep filed a personal injury lawsuit against Perkins seeking compensatory and punitive damages. Estep died before the matter came to trial almost two years later.[1] After Estep's death, his Estate was substituted as the plaintiff. Estep's widow, Ruth Estep, acted as personal representative for the Estate. Following a trial, a jury returned a verdict in favor of the Estate and against Perkins, in the amount of $650,000 in compensatory damages and $15,000 in punitive damages. State Farm paid the limits of its policy, which was $50,000, to the Estate. Thereafter, in proceedings supplemental initiated by the Estate, the Estate asked Perkins to assign his rights to the Estate for any bad faith claim he may have against State Farm. Perkins refused and the Estate petitioned the court to order Perkins to make the assignment. The tri-

---

1. Dan Estep died on June 29, 2001.

al court granted the Estate's request and ordered Perkins to assign the aforementioned rights to the Estate. State Farm appeals that ruling, presenting the following consolidated, restated issues for review:

1. Is an insurer entitled to intervene in proceedings supplemental to defend itself against the involuntary assignment of a bad-faith claim against the insurer?

2. Did the trial court err in forcing Perkins, against Perkins's wishes, in a proceeding supplemental, to assign any claim he might have against State Farm for refusing to defend him in good faith?

3. Did the trial court err in ordering the assignment of rights without affording State Farm the opportunity to appear at a hearing and defend its interests in a proceeding supplemental?

In addition to the issues presented by State Farm, we raise the following issue *sua sponte:*

4. May State Farm's liability to Perkins for bad faith representation be determined in a proceeding other than the instant proceeding supplemental filed by the Estate?

We affirm in part, reverse in part, and remand.

The facts favorable to the ruling are that on April 26, 2000, Estep was operating a motorcycle westbound on 25th Street in Columbus, Indiana at the same time that Perkins was operating a pickup truck eastbound on the same street. Apparently, Perkins turned left at or near the intersection of 25th Street and Fairlawn Drive. In so doing, Perkins failed to yield the right-of-way to Estep and struck the left rear portion of Estep's motorcycle. At the time, Perkins was under the influence of marijuana. Estep suffered catastrophic injuries from which he had not recovered at the time of his death more than fourteen months later.

On August 3, 2000, Estep filed a personal injury lawsuit against Perkins. In his complaint, Estep sought compensatory and punitive damages. State Farm retained Michael Stephenson of the law firm of McNeely, Stephenson, Thopy & Harrold to represent Perkins, and Stephenson entered his appearance in the case on August 11, 2000. On September 22, 2000, Stephenson filed an answer on Perkins's behalf. Perkins retained a second attorney—Jerry L. Susong—to represent him, and Susong entered his appearance on November 13, 2000. A trial date was set and the lawsuit proceeded toward trial. On September 10, 2001, the trial court imposed sanctions against Perkins and attorney Stephenson's law firm based upon Perkins's failure to appear at a hearing. On September 27, 2001, Stephenson filed a motion entitle "Motion to Stay Proceedings," *Appellant's Appendix* at 35, requesting a stay on the following grounds:

> [U]ndersigned counsel has diligently complied with the Court's orders but has not received the necessary cooperation from his client to properly represent him in this matter. Further, there has been a breakdown in communications between counsel and his client which has reached the point where the undersigned counsel cannot continue representation of the client.

*Appellant's Brief* at 35. The *prayer* for relief in the motion to stay was "that the Court enter a stay of proceedings regarding further discovery and proceedings for a period of thirty (30) days *to allow the defendant to retain replacement counsel*[.]" *Id.* at 36 [emphasis supplied]. The court denied that motion on October 8, 2001. On March 7, 2002, a jury awarded

the Estate $650,000 in compensatory damages and $15,000 in punitive damages. The next day, March 8, 2002, State Farm presented a $50,000 check—the limits of Perkins's insurance policy—to the Bartholomew County Clerk's Office.

On April 24, 2002, the Estate filed Plaintiff's Verified Motion for Proceeding Supplemental to facilitate satisfaction of the excess judgment (viz., that which was not covered by the State Farm insurance policy) against Perkins. The court granted that motion on April 25 and ordered Perkins to appear at a May 20 hearing to testify about his financial situation. At the May 20 hearing, the Estate learned that Perkins had filed tax returns. The court ordered Perkins to provide copies of those returns for the Estate's review. On July 11, 2002, the Estate filed a motion asking the court to find Perkins in contempt because he had failed to comply with the court's order and provide copies of his tax returns to the Estate. On July 12, 2002, Stephenson filed a Motion for Leave to Withdraw Appearance. The trial court granted Stephenson's motion to withdraw on July 16, 2002.

On August 19, 2002, the court conducted a hearing on the Estate's motion for contempt. Perkins appeared at that hearing with his counsel, Susong. At the hearing, the Estate asked Perkins to assign any rights he might have to proceed against State Farm for bad faith representation. Perkins refused to do so, primarily because he and Susong believed that State Farm had ably represented Perkins in defending the Estate's lawsuit, and thus did not believe there were any such rights to assign. Susong explained Perkins's refusal as follows:

> Yeah, I would object to that because to my knowledge and his nothing [sic] there's nothing to assign. He has no cause of action, so we would object to any assignment of a non-existing item. If you know of a specific action ... I'm not aware of him being in any accidents, of him being a potential heir to any estate or having no potential action. So consequently I wouldn't have him just sign a blank assignment. If he has something I'm advising him to assign you something he had. I have no idea what you're referring to.

> *     *     *     *     *

> I was just saying that I would not have Mr. Perkins voluntarily agree to an assignment to bring in a third party on the basis that there may be some reason that they owe something that he have no objection to. They defended him. We discussed that considerably as far as they defended him far beyond and they had a suit separate which the court here can take notice of, as far as bringing them into the suit. They defended it all the way through. I personally would not be party to opening the insurance company up to defending another case that their own insured does not wish to bring, without some showing of fact that they did do something (wrong). Because I'm not aware of any bad faith dealing on their parts [sic]. Failure to offer anything less than limits at any point [sic]. If that's what you're driving at I mean. [sic]. If the court orders him I'm going to direct him to follow the Court's directions. But personally on his behalf I would not advise him nor have him voluntarily grant an assignment that would open up a third party to a law suit.

*Transcript* at 4, 7.

The Estate asked the court to order Perkins to assign his rights. State Farm did not receive notice of that request. Following that hearing, the court granted the Estate's request and ordered Perkins

to assign his rights to proceed against State Farm. Perkins initially failed to comply with the order and the Estate filed a motion for contempt seeking to compel Perkins to execute the assignment and to pay the Estate's attorney fees. Again, that motion was not served upon State Farm. Finally, on January 27, 2003, Perkins executed the involuntary assignment. It is undisputed that State Farm was not served with any of the foregoing motions or orders and was unaware of anything that occurred in the proceedings supplemental after Stephenson withdrew his appearance, until September 25, 2003. On that day, State Farm was served with a complaint for damages filed by the Estate in an Illinois court. The complaint, based upon the assignment of rights executed by Perkins, sought recovery of the amount by which the jury verdict exceeded the insurance policy proceeds paid by State Farm. The complaint alleged three theories of recovery against State Farm:[2] fraud, constructive fraud, and breach of contract.

On November 10, 2003, State Farm filed a motion to intervene in the proceeding supplemental action for the purpose of filing a Trial Rule 60(B) motion to set aside the order compelling Perkins to assign his rights against State Farm. State Farm argued it had a right to intervene, as explained in the following paragraph of the motion to intervene:

> State Farm was not named as a party defendant in the Proceeding Supplemental or notified of the request for assignment, despite the assignment's direct effect on State Farm's interests. The Court's Order granting the assignment of Defendant's potential bad faith claim has resulted in State Farm having to defend the Plaintiff's claims in Illinois, as the Plaintiff has taken her assignment and filed suit in a different forum. State Farm was never given the opportunity to challenge the Court's unauthorized assignment of Defendant's claim. If State Farm is not allowed to intervene in this Indiana action, State Farm may be left without a means of protecting its interests.

*Appellant's Appendix* at 126. On December 18, 2003, the trial court denied State Farm's motions to intervene and set aside. State Farm appeals those rulings.

1.

■ We begin with the denial of State Farm's motion to intervene. The decision whether to grant or deny a petition to intervene is committed to the trial court's discretion. *Herdrich Petroleum Corp. v. Radford*, 773 N.E.2d 319 (Ind.Ct.App. 2002), *trans. denied.* We review such decisions for an abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable inferences to be drawn therefrom. *Id.* Motions to intervene as a matter of right are governed in Indiana by Indiana Trial Rule 24, which states, in relevant part:

> (A) Intervention of Right. Upon timely motion anyone shall be permitted to intervene in an action: . . .
>
> (2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's inter-

---

**2.** The complaint also alleged that Susong had been negligent in representing Perkins in the lawsuit. That matter is not before us.

est is adequately represented by existing parties.

This court has set out the applicable guidelines for determining whether a motion to intervene as a matter of right should be granted, as follows:

> Under Indiana law, persons seeking intervention as a matter of right must show: 1) that they have an interest in the subject of the action; 2) that the disposition of the action may as a practical matter impede their protection of that interest; and 3) that representation of their interest by existing parties is inadequate. Whether a particular factual situation satisfied this three-part test is within the discretion of the trial court.

*Herdrich Petroleum Corp. v. Radford,* 773 N.E.2d at 324 (citations omitted).

■ The first question that must be answered in applying the *Herdrich Petroleum Corp. v. Radford* test is whether State Farm had an interest in the subject matter of the Estate's request to compel Perkins to assign to the Estate his rights to proceed against State Farm on the theory of bad-faith representation. The Estate claimed at oral argument before this court that State Farm did not have such an interest.[3] We cannot agree.

■ We pause at this point to note a critical fact in this case that influences, and indeed compels, all of the legal conclusions that follow, not only with respect to this issue, but with all others as well. That pivotal fact is: this case emanates from a proceeding supplemental. A proceeding supplemental is equitable in origin and is designed for one purpose: to procure payment of a judgment when execution against the property of the judgment debtor is returned unsatisfied, in whole or in part. *Rice v. Com'r, Indiana Dept. of Envtl. Mgmt.,* 782 N.E.2d 1000 (Ind.Ct. App.2003). Proceedings supplemental require the judgment debtor to appear before the trial court that issued the underlying judgment to answer concerning any and all nonexempt property in his or her possession. *See* Ind.Code Ann. § 34–55–8–1 (West, PREMISE through 2003 1st Regular Sess.). We stress here that proceedings supplemental are not separate and independent actions. *Rice v. Com'r, Indiana Dept. of Envtl. Mgmt.,* 782 N.E.2d 1000. Rather, they are extensions of the underlying action from which they stem. Their purpose is to provide a forum to the creditor for discovering assets, reaching equitable and other interests not subject to levy and sale at law, and setting aside fraudulent conveyances. *Id.* To achieve those ends, the trial court is vested with broad discretion in conducting the proceedings. *Brewer v. EMC Mortg. Corp.,* 743 N.E.2d 322 (Ind.Ct.App.2001), *trans. denied.*

■ In general, three forms of relief are available to a judgment creditor in a proceeding supplemental: (1) the judgment debtor must appear before the trial court and be subjected to examination concerning available property; (2) the judgment debtor must apply particular property to satisfy the judgment; and (3) a third-party garnishee is joined as a party and must answer with respect to any non-exempt property it holds for the judgment-debtor or any obligation it owes to the judgment-debtor. *Keaton v. Fort Wayne Neurosurgery,* 780 N.E.2d 1183 (Ind.Ct. App.2003). "In the event that a person is named as a garnishee, the motion must allege that the 'garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judg-

---

**3.** Oral argument was conducted in this cause in Indianapolis on August 4, 2004. We commend both parties for the high quality of the presentations of their respective contentions.

ment debtor subject to execution or proceedings supplemental to execution....'" *Id.* at 1185 (quoting Ind. Trial Rule 69(E)). Finally, and importantly, proceedings supplemental are not appropriate vehicles for creating, enlarging, or reducing liability. *Illinois Founders Ins. Co. v. Horace Mann Ins. Co.*, 738 N.E.2d 705 (Ind.Ct. App.2000). We reiterate that they are "merely a continuation of the underlying claim, initiated under the same cause number for the sole purpose of enforcing a judgment." *Id.* at 708.

With the foregoing principles in mind, we return to the question at hand, viz., did State Farm have an interest in the outcome of the proceeding supplemental in general, and the issue of the assignment sought by the Estate in particular? Clearly, it did. As indicated above, the sole purpose of the proceeding supplemental was to identify any assets that Perkins might have to satisfy the Estate's judgment against him. As will be explained more fully in Issues 3 and 4, *infra*, all matters relating to the identity and validity of Perkins's assets must be resolved in the proceeding supplemental. To foreshadow our holdings with respect to Issues 3 and 4, *infra*, the question whether Perkins has a colorable claim of bad-faith representation against State Farm is one that must be resolved by the Bartholomew Circuit Court in the proceeding supplemental action initiated by the Estate. We need not undertake a detailed legal analysis to conclude that State Farm has an interest in the outcome of the question whether it (State Farm) owed an obligation to Perkins based upon bad-faith representation in the lawsuit filed by the Estate.

The second element of the *Herdrich Petroleum Corp. v. Radford* test is whether, assuming State Farm had an interest in the outcome of the bad-faith question, the disposition of the action may as a practical matter impede its protection of that interest. Again, the resolution of that question does not turn on fine legal distinctions. Obviously, a determination that State Farm was indeed obligated to Perkins as a result of faulty representation would represent an impediment to State Farm's protection of its interest in that matter.

The final element of the *Herdrich Petroleum Corp. v. Radford* test is whether, in State Farm's absence, State Farm's interests in the litigation were adequately represented by other parties. Without State Farm present in the proceeding supplemental, there were only two parties: the Estate and Perkins. Obviously, the Estate's interests were the antithesis of State Farm's. Although Perkins argued at the hearing that there was no factual basis for a bad-faith claim against State Farm, he could not be expected to represent State Farm's interests beyond offering that bare assessment. Therefore, State Farm's interests in the proceedings were not adequately represented by others. Under these circumstances, State Farm had a right to intervene in the proceedings supplemental. The trial court abused its discretion in denying State Farm's motion to intervene under Indiana Trial Rule 24(A).

2.

█ State Farm contends the trial court erred in forcing Perkins, against his wishes, in a proceeding supplemental without notice to State Farm, to assign to the Estate any claim he might have against State Farm for failing to defend him in good faith. In essence, State Farm urges the position that a forced assignment violates Indiana law. State Farm challenged that ruling below in the form of a motion to set aside judgment under T.R. 60(B). We review the grant or denial of a T.R. 60(B) motion for relief from judgment utilizing an abuse of discretion standard. An abuse of discretion occurs when the trial

court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *WW Extended Care, Inc. v. Aetna Life Ins. Co.*, 755 N.E.2d 712 (Ind.Ct.App.2001).

State Farm contends, "a forced assignment violates Indiana law." *Appellant's Brief* at 16. The Estate counters this argument obliquely, with the somewhat puzzling assertion that "State Farm misstates the record in claiming Perkins refused to execute the assignment; thus, the assignment was not forced and does not violate Indiana law." *Appellee's Brief* at 29. The Estate's argument is as follows: Perkins refused to voluntarily assign his rights, and therefore the Estate petitioned the court to order him to do so. The court granted the request and ordered Perkins to execute the assignment. The court directed the Estate to prepare the assignment form and forward it to Perkins for his signature. If, however, he objected to the contents of the assignment, he was directed to "file written objection to those contents within fourteen days of it being filed with the Court." *Appellant's Appendix* at 102. The Estate drafted the assignment and forwarded it to Perkins for his signature. Perkins executed the assignment and returned it without registering an objection. The Estate claims Perkins's failure to object constituted acquiescence in the assignment, thus rendering it voluntary.

■ The Estate misconstrues the meaning and import of the quoted language from the order. Taken in context, the "objection to the contents" referred to in the order addresses the *form* of the assignment order, not the *fact* of the assignment itself. Perkins had already registered his objection to the fact of the assignment by expressly refusing to accede to the Estate's request to execute the assignment. Simply put, the Estate's line of reasoning ignores the foundational fact that the order from which this case stems, i.e., the order compelling assignment of rights, was necessitated by Perkins's *steadfast refusal* to do so voluntarily. The involuntary nature of that assignment cannot be transformed into a voluntary one by the procedural sleight-of-hand urged by the Estate. Thus, our analysis proceeds on the conclusion that Perkins's assignment of rights was involuntary.

■ Our research reveals a dearth of Indiana law on the viability of an involuntary assignment of rights in any context. We will not undertake here a general treatment of the topic, because this issue must be considered in the particular procedural context from which this case arises, i.e., in a proceeding supplemental. We have already explained the nature of proceedings supplemental. To review the significant points, proceedings supplemental are equitable in nature. *Stuard v. Jackson & Wickliff Auctioneers, Inc.*, 670 N.E.2d 953 (Ind.Ct.App.1996). Such actions are merely continuations of an action that culminated in the imposition of a judgment for money damages. The judgment debtor is required to appear at the proceeding supplemental hearing and identify his available assets, from which the judgment debt may be satisfied in whole or in part. As to the trial court's role, this court has stated, "[p]ublic policy demands that wide latitude be given and broad discretionary power be exercised by the trial court, to the end that properly rendered judgments are satisfied." *Id.* at 955. Is it consistent with this charge that a trial court should be permitted to order a judgment-debtor to assign his rights in a lawsuit to the judgment creditor? Absolutely. In fact, such is the very essence of the court's task with respect to the identified assets of the judgment-debtor. We conclude, therefore, that as a general rule, a

trial court may order a judgment-debtor to assign any rights he or she might have in a lawsuit against a third party. We affirm the granting of the Estate's motion to compel the assignment of rights.

### 3.

We now proceed to the question whether a proceeding supplemental action involving a judgment-debtor's rights in a lawsuit against his or her insurance company may be conducted without affording the insurance company notice and an opportunity to be heard. To answer this question, we must first consider the so-called "direct action rule."

By way of background, our supreme court has determined that an insurer owes a duty of good faith to its insured, and that the breach of that duty gives rise to a tort action. *See Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515 (Ind.1993). Such tort was established in view of the "special relationship" that exists between an insured and an insurer. *Id.* at 519. It has been determined, however, that the insurance company's duty does not exist with resp ·ct to third party claims. *See Menefee v. Schurr*, 751 N.E.2d 757 (Ind.Ct.App. 2001), *trans. denied; see also Bennett v. Slater*, 154 Ind.App. 67, 289 N.E.2d 144, 149 (1972) (" '[t]he excess liability of [an insurance] company arises out of the relationship between insured and company. [The judgment-creditor] is a stranger to that relationship' ") (quoting Robert F. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L.Rev. 1136, 1176 (1954)). Thus, the rule developed that an injured third party does not have the right to bring a direct action against a wrongdoer's liability insurer. *See, e.g., id.* That rule—the direct action rule—is still in force today.

■■■ It would seem at first blush that the direct action rule is incompatible with a rule permitting a forced assignment of rights against an insured/judgment-debtor with respect to a potential lawsuit against the judgment-debtor's insurer. Indeed, that would be the case but for the critical factor we have alluded to several times in this opinion—the fact that this case arises from a proceeding supplemental. Such a proceeding differs from a traditional lawsuit (which means, in the context of this discussion, an independent action brought by the third party against the insurer) in that the judgment debtor/insured would not participate as a litigant in the traditional lawsuit, but would in the proceeding supplemental. Under the circumstances of a proceeding supplemental, the judgment debtor's participation in the action removes the primary rationale (viz., the judgment creditor's lack of standing, *see Bennett v. Slater*, 154 Ind.App. 67, 289 N.E.2d 144) upon which the direct action rule was based. Put in its simplest terms, an assignment of rights by the judgment debtor/insured in a proceeding supplemental does not implicate the direct action rule because the court is not assigning to a third party the insured's right to bring an *independent action* against the insurer. Rather, the court essentially is assigning to the judgment creditor the right to *receive the proceeds*, if any, derived from such liability. This presents another question: how is the issue of the insurer's liability to be determined?

■■■ A creditor seeking proceedings supplemental to execution bears the burden of demonstrating that the debtor has property or income that is subject to execution. *Kirk v. Monroe County Tire*, 585 N.E.2d 1366 (Ind.Ct.App.1992). Typically, the creditor will, through the proceedings supplemental process, discover the identity of third parties that hold nonexempt property of the debtor, or owe an obligation to the debtor. At that point, the creditor will

name such parties as garnishees, and such garnishees will be ordered to appear and answer concerning that property or obligation. According to T.R. 69(E), a party identified as holding or owing assets to the debtor "shall be entitled to service of process as provided in Rule 4." Further, T.R. 69 indicates that a garnishee must be given an opportunity to attend a hearing where the matter of liability will be addressed and, ultimately, resolved. Therefore, we conclude that the trial court erred in conducting proceedings relative to the bad-faith claim without serving notice upon State Farm, as a potential garnishee under T.R. 69, and affording State Farm the opportunity to appear at all hearings on that issue.

### 4.

As a final matter, we feel compelled to address a question implicit in the issues presented by the parties, but left unresolved by our opinion thus far. We have determined that, although the trial court had the discretion to order Perkins to assign his rights to the Estate, State Farm was entitled to notice of the action and to appear and participate in hearings on that subject. These conclusions lead us to the doorstep of the ultimate question in the underlying litigation in this appeal— whether State Farm is liable to Perkins (and therefore to the Estate) under a theory of bad-faith representation. Although that subject was broached at oral argument before this court, we note the question was not squarely addressed by the trial court, and therefore there is no ruling in that respect to review. We are compelled to address certain aspects of the question, however, because they will arise upon remand.

Perkins originally refused to agree to assign his rights to a claim of bad faith against State Farm because, in his opinion, there were no facts that would support such a claim. Perkins and attorney Susong believed there was no colorable claim of bad faith to be assigned. The trial court correctly determined that Perkins was compelled to make the assignment, to the extent that a bad-faith claim existed, in satisfaction of the judgment debt. That action, however, did not discharge the trial court's task with respect to the bad-faith claim. We have indicated previously that a proceeding supplemental has a specific and limited purpose: to procure payment of a judgment when execution against the property of the judgment debtor does not satisfy the debt in full. *Rice v. Com'r, Indiana Dept. of Envtl. Mgmt.*, 782 N.E.2d 1000. We have also noted that trial courts are vested with broad discretion in conducting the proceedings. *Brewer v. EMC Mortg. Corp.*, 743 N.E.2d 322. The expansive nature of the parameters of the trial court's discretion in this setting is underscored by T.R. 69, which provides that such proceedings are summary in nature because the claim has already been determined to be a justly owed debt reduced to judgment. *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254 (Ind.Ct.App. 2002), *trans. denied.* That, coupled with the principle that proceedings supplemental are not appropriate vehicles for creating, enlarging, or reducing liability, *Illinois Founders Ins. Co. v. Horace Mann Ins. Co.*, 738 N.E.2d 705, illuminates not only the extent of the discretion granted to the trial court, but also reveals something of the trial court's function in that setting.

In a nutshell, the trial court must not only identify potential assets, but also assess the viability of those assets. In the instant case, the trial court determined that *if* Perkins had a bad-faith claim against State Farm that would result in a money judgment in favor of Perkins, then such claim (i.e., the money paid to Perkins

as damages therefor) should be assigned to the Estate. The trial court failed, however, to determine *whether* Perkins had a viable bad-faith claim in the first place. That determination, like viability determinations concerning all of the judgment-debtor's other assets, must be made by the proceedings supplemental court.

The transcript of the September 16, 2002 proceeding supplemental hearing indicates that the court maintained neutrality on the question of whether State Farm was, in fact, liable to Perkins for bad-faith representation—and for good reason. The record indicates there was little, if any, evidence presented at the hearing on that question. When pressed as to the grounds for a bad-faith claim, the Estate's attorney answered only in the vaguest of terms, leaving the precise nature of those grounds largely to the imagination. It

appears that it was only later, via the complaint filed in the Illinois action, that the Estate finally identified the theory behind the bad-faith claim.[4] Although we think it implicit in the foregoing discussion of this issue, we now explicitly hold that a decision about the merits of Perkins's bad-faith claim against State Farm must be made in the proceeding supplemental by the Bartholomew Circuit Court,[5] not by the Circuit Court of the Sixth Judicial Circuit in Champaign County Illinois, or any other court for that matter.

■ In summary, in view of the nature and purpose of proceedings supplemental, the trial court did not err in forcing Perkins to assign his rights to any proceeds from a bad-faith claim against State Farm. State Farm was entitled to notice and to appear at all hearings on that matter, how-

4. Indeed, the grounds for a bad-faith claim appear to have been discussed at much greater length at oral argument before this court than at the September 16 hearing before the trial court. To summarize, the Estate's bad-faith contention is based upon the "decision" of the law firm of McNeely, Stephenson, Thopy & Harrold to allow attorney Stephenson to continue representing Perkins after Stephenson sought a continuance for the purpose of allowing Perkins to retain replacement counsel. According to Stephenson, the lines of communication between Perkins and Stephenson had deteriorated to the point that it compromised Stephenson's ability to continue representing Perkins. We note first that the failure to communicate appears to have been Perkins's, not Stephenson's, and it certainly did not reflect personal animus from Stephenson's perspective. Also, we note that Stephenson attempted to initiate a withdrawal from the case, but the trial court would not permit it. Lastly, it appears to this court from the sparse record before us that Stephenson ably represented Perkins in the lawsuit. Upon pointed questioning by this court at oral argument, the Estate's attorney was unable to point to a specific instance of substandard representation on Stephenson's part. Thus, it *appears* that the claim of bad faith is premised not upon deficient performance that

prejudiced Perkins, but upon the mere fact that neither McNeely, Stephenson, Thopy & Harrold nor State Farm replaced Stephenson after Stephenson indicated a desire to withdraw because Perkins was not communicating with him. Such is not the stuff of a bad-faith claim. Be that as it may, it is the trial court's task upon remand to assess the merits of the Estate's claim of bad faith after considering the grounds advanced by the Estate and the evidence offered in support thereof.

5. The hearing on that question will focus upon the value, if any, of the Estate's claim against State Farm. That will, of course, include an assessment of the merits of the claimed theory of liability. We do not know the nature of the evidence the Estate will present with respect to the theory, viability, and value of the bad-faith claim against State Farm. We are constrained to observe, however, that the evidence appearing in the appellate materials and/or discussed at oral argument in support of the Estate's case is simply not sufficient to carry the Estate's burden. In fact, if the evidence presented at the hearing upon remand is no greater than that which is before this court, then there is no asset of any value and the court should enter an order to that effect.

ever, and therefore was entitled to intervene in the proceedings. The trial court erred in denying that request. Finally, the proceedings supplemental court must make a determination regarding the merits of the bad-faith claim, which it should do after convening a hearing at which evidence will be presented on that issue.[6] This cause is remanded with instruction to make that determination consistent with the principles set out in this opinion.

Judgment affirmed in part, reversed in part, and remanded.

BAILEY, J., and BAKER, J., concur.

---

**6.** A contrary holding on this issue would contravene the direct action rule.