Quincy and Shannon BRANHAM,
Appellants,

v.

Rodney VARBLE and Norman
Chastain, Appellees.

No. 62A01–1004–SC–192.

Court of Appeals of Indiana.

Oct. 28, 2010.

Stephen E. Culley, Katherine J. Rybak, Indiana Legal Services, Inc., Evansville, IN, Attorneys for Appellants.

## OPINION

FRIEDLANDER, Judge.

Quincy and Shannon Branham appeal from an order of the Perry Circuit Court, Small Claims Division, in the enforcement of a civil money judgment. The Branhams present two issues for review:

1. Did the trial court abuse its discretion and act contrary to law when it ordered the Branhams to pay $50 per month toward a small claims judgment?

2. Did the trial court abuse its discretion and act contrary to law when it ordered the Branhams to make repeated court appearances and for Quincy to seek five jobs per week?

We affirm in part and reverse in part.

On March 13, 2009, the trial court entered a consent judgment in favor of Rodney Varble and Norman Chastain and against the Branhams in the amount of $4350.75, plus $99.00 in court costs. On November 12, 2009, the parties appeared before the court and an agreed garnishment order was entered.[1] The parties were also ordered to reappear on March 30, 2010 for a status hearing. The Branhams appeared without counsel for each of the hearings.

At the March 30 hearing, the court was informed that no monies had been received as a result of the garnishment order. During subsequent questioning by the attorney representing the judgment-creditors, Quincy informed the court that he has worked for Harrison Auto Salvage, earning $20.00 per day, $100.00 per week, for approximately 3 years. Quincy acknowledged that he has not looked for alternative employment since he began working for Harrison Auto Salvage. Out of his earnings, Quincy testified that he pays $200 per month for a truck that he uses as his means of transportation. Quincy admitted that he purchased the truck for $2500.00 while this action was pending. Shannon advised the court that she receives Supplemental Security Income of $674.00 per month, out of which she pays rent of $400.00. Quincy and Shannon both contribute to the cost of food and utilities. At the conclusion of the evidence, the court ordered the Branhams to pay $50.00 per month toward the judgment and further ordered Quincy to do a job search by submitting five applications a week. The court scheduled a second status hearing for June 16, 2010. This appeal ensued.

We begin by noting that the appellees did not file a brief. When appellees do not submit an answer brief we need not undertake the burden of developing an argument on their behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065 (Ind.2006). Rather, we will reverse if the appellant's brief presents a case of prima facie error. *Id.* Prima facie error in this context is error "at first sight, on first appearance, or on the face of it." *Trinity Homes, LLC v. Fang*, 848 N.E.2d at 1068. If an appellant does not meet this burden, we will affirm. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065.

## 1.

The Branhams argue that the court violated their rights under article 1, section 22 of the Indiana Constitution, which provides:

> The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud.

This provision is not self-executing, but requires legislative enactment to make it effective. *Beard v. Indianapolis Fancy Grocery Co.*, 180 Ind. 536, 103 N.E. 404 (1913).

The Branhams direct us to Ind. Code Ann. § 24–4.5–5–105(2)(b) (West, Westlaw through 2010 2nd Regular Sess.), which exempts from garnishment the first $215.50 (thirty times minimum wage) of income per week. The Branhams also direct us to Ind.Code Ann. § 34–55–10–2 (West, Westlaw through 2010 2nd Regular

---

1. We do not know what transpired during the November 12 hearing and are not provided with the details of the agreed garnishment order. In fact, the record before is very limited, consisting only of the chronological case summary and a seventeen-page transcript of the most recent hearing before the court.

Sess.), which provides a list of various types of property that is exempt from execution to satisfy a judgment.[2] The Branhams appropriately observe, however, that the judgment debtor must assert an exemption at the appropriate time during the proceedings supplemental. *See Mims v. Commercial Credit Corp.*, 261 Ind. 591, 307 N.E.2d 867 (1974).

■ Here, the Branhams, who were not represented by counsel, did not assert any exemptions or in any way object to the trial court's order that they pay $50 toward the consent judgment in favor of Varble and Chastain. Nevertheless, on appeal the Branhams assert that when a debtor is unrepresented, it is incumbent upon the court to protect the debtor's constitutional rights and sua sponte "determine which exemptions result in the least burdensome order for the debtor." *Appellants' Brief* at 4. Although the dissent relies upon *Mims v. Commercial Credit Corp.* to credit the Branhams's assertion in this regard, we do not agree that *Mims* should be so broadly construed.

In *Mims,* a debtor who had defaulted on a retail installment contract appealed from a garnishment order entered against her. The trial court's garnishment order complied with limitations set forth in the Uniform Consumer Credit Code (UCCC), resulting in a garnishment of $2.25 per week, but did not take into account the resident-householder exemption, which would have resulted in a garnishment of $4.20 per week.[3] The debtor, who was apparently not represented by counsel, did not assert the resident-householder exemption during the proceeding supplemental. The debtor obtained pauper appellate counsel, who questioned whether the legislature had effectively repealed the resident-householder exemption by enacting the UCCC, and, if not, whether the burden to assert such exemption rested with the debtor.

Concluding that the residential-householder exemption survived the adoption of the UCCC, the court addressed the second issue. The Court expressly acknowledged that this court had correctly ascertained the general rule that the burden is upon the debtor to claim the exemption "at an appropriate time during proceedings supplemental." *Id.* at 869. The court then expressed its belief that the general rule "should admit of exceptions and modifications consistent with fairness and practical realities." *Id.* Keeping in mind the constitutional underpinnings of *garnishment* exemption statutes, the court prescribed the following procedure:

If a debtor-defendant is represented by counsel during proceedings supplemental, the burden is upon the debtor to affirmatively interpose the resident-householder claim. This, of course, is the general rule cited by the Court of Appeals. If, however, a debtor-defendant is not represented by counsel, the

---

2. Examples of property of a debtor domiciled in Indiana that is exempt from execution include: real estate or personal property constituting the personal or family residence of the debtor or a dependent of the debtor of not more than $15,000; other real estate or tangible personal property of $8,000; intangible personal property of $300; professionally prescribed health aids; monies in a medical savings account or education savings account; and a disability benefit awarded to a veteran, just to name a few.

3. Given the mathematical reality, i.e., that the position taken by debtor's counsel on appeal would have "substantially damaged" the debtor, the Court "seriously question[ed]" counsel's motive in perfecting the appeal. In this vein, the Court noted that the debtor's counsel "appear[ed] to be more concerned with obtaining a definitive statement of the law than with furthering the interests of his client." *Mims v. Commercial Credit Corp.*, 307 N.E.2d at 868, 869.

trial court must determine: (1) whether the debtor is a resident-householder, and (2) if the debtor is a resident-householder, which exemption (either the UCCC or resident-householder) would be least burdensome on the debtor. The trial court, after due consideration of these matters, shall enter the appropriate garnishment order, being always mindful of the fact that the amount garnished shall never exceed 25% of disposable weekly earnings in excess of $48.00.

*Id.* at 869–70.

The dissent interprets the court's newly established "procedure" to mean that trial courts are required to assert, presumably, all exemptions on behalf of debtors who are not represented by counsel in addition to exemptions applicable to garnishments. To adopt the dissent's view that *Mims* requires a trial court to assert the myriad of exemptions on behalf of unrepresented debtors in every instance essentially recasts the role of the judiciary from traditional decision-making to one of advocacy for one of the parties. As noted in footnote 2, *supra,* there are numerous exemptions that a debtor is privileged to assert, some of which are applicable only in certain factual situations that may or may not be apparent. To place the burden on the court to assert all exemptions a debtor is entitled to claim would require the court to hold a mini-trial and flush out evidence pertaining to the various exceptions and then determine which exemptions yield the result most beneficial to the debtor.

In our view, the procedure proposed by the Court in *Mims* was specific to the case before it. Indeed, we note that in the thirty-six years since *Mims* was decided, there has been no other case to adopt the interpretation of *Mims* proposed by the dissent. In fact, there is only one reference to *Mims* pertinent to this case found in *Prime Mortgage USA, Inc. v. Nichols,* 885 N.E.2d 628 (Ind.Ct.App.2008), wherein the court cited *Mims* for the proposition that the burden is upon the debtor to assert an exemption. This is the rule we apply here.

■ The Branhams acknowledge that they did not assert any exemptions at the appropriate time during the proceeding supplemental. Nevertheless, it is clear from the record that the court considered the Branhams' ability to pay and found their credibility lacking. During the proceedings supplemental, Quincy and Shannon each informed the court of their weekly/monthly earnings and expenses (without any supporting documentation). As meager as those amounts appear to be, the court recognized that at the end of the month, after the family bills had been paid and food purchased, Quincy had sufficient funds to pay $200 toward a truck that he purchased for $2500.00 during the pendency of these proceedings. It was on this basis that the court found that Quincy and Shannon had sufficient funds to pay $50 a month toward this judgment. Implicit in the court's order is that the court did not find Quincy's and Shannon's testimonies to be completely credible. The court considered the evidence before it and concluded that the Branhams established they had sufficient funds to pay on the judgment against them. We find no error.

## 2.

The Branhams also argue that the trial court overstepped its authority when it required repeated court appearances and further ordered Quincy to seek alternative employment by submitting five applications a week.

■ Proceedings supplemental, as provided for in Ind. Trial Rule 69, are summary in nature because the claim has already been determined to be a justly owed debt reduced to judgment. *Gallant*

*Ins. Co. v. Oswalt,* 762 N.E.2d 1254 (Ind. Ct.App.2002), *trans. denied.* Indeed, a proceedings supplemental is merely a procedure designed to procure payment of a judgment when execution against the property of the judgment debtor is returned unsatisfied, in whole or in part. *Rice v. Comm'r, Ind. Dep't of Envtl. Mgmt.,* 782 N.E.2d 1000 (Ind.Ct.App.2003). " 'Under Indiana law, the only issue presented in proceedings supplemental is that of affording the judgment-creditor relief to which [they are] entitled under the terms of the judgment.' " *Id.* at 1004 (quoting *Nat'l Mut. Ins. Co. v. Sparks,* 647 N.E.2d 375, 377 (Ind.Ct.App.1995), *trans. denied* ). As such, proceedings supplemental has its origins in equity, as a remedy "to the creditor for discovering assets, reaching equitable and other interest not subject to levy and sale at law and to set aside fraudulent conveyances." *Stuard v. Jackson & Wickliff Auctioneers, Inc.,* 670 N.E.2d 953, 955 (Ind.Ct.App.1996).

The Branhams argue that the garnishment order resulting from the November 12 proceedings supplemental served as a bar to additional proceedings, including the status hearing held on March 30, 2010. The Branhams maintain that the trial court could not enter a new order against them, as it did following the March 30 hearing, "in the absence of allegations and evidence that Branham's financial circumstances changed since the prior order." *Appellants' Brief* at 6.

 A judgment on a proceedings supplemental will bar a second proceeding only when it is clear that: (1) the same specific property is being acted upon; (2) the same issues are presented; (3) the same evidence is necessary to support the allegations in both proceedings; and (4) the same parties are involved, for the same purpose or same objective. *Kirk v. Monroe County Tire,* 585 N.E.2d 1366 (Ind.Ct.

App.1992). Here, the parties appeared on November 12, 2009, presumably for a proceeding supplemental. It is unclear what transpired during the November 12 hearing, other than the result was that an agreed garnishment order was filed. Without being adequately informed as to what transpired during the November proceedings supplemental, we cannot assess whether circumstances have changed and what or if the same specific property is being acted upon, whether the same issues are being presented, or whether the evidence is the same in the March 30 proceedings. *Accord Kirk v. Monroe County Tire,* 585 N.E.2d 1366.

In any event, the record before us indicates that the circumstances have changed or that at the very least, new evidence was being considered. To be sure, the result of the March 30 hearing is not a garnishment, but rather an order that the Branhams pay $50 a month toward the judgment. It was as a result of the status hearing that the court learned that the Branhams had $200 in surplus income that they were able to use to make payments on a recently purchased truck. It is from this surplus income that the court ordered payment of $50 toward the judgment in this case.

Furthermore, we note that this is a small claims action. To ensure collection of small claims judgments, Ind. Small Claims Rule 11(C), provides that a court "may order a judgment paid the prevailing party in any specified manner. If the judgment is not paid as ordered, the court may modify its payment order as it deems necessary." While S.C.R. 11(C) does not empower a trial court to harass a judgment debtor, it does provide the court with authority to exercise discretion to enforce a judgment. Such Rule is in line with the purpose of small claims proceedings in that they are meant to be expedited, with at-

tendant reduction in time and expense for both plaintiff and defendant. Here, in setting a status hearing, at which counsel for the judgment-creditors was present, the court was exercising its discretion to enforce the judgment.

Keeping in mind T.R. 69 governing proceedings supplemental and S.C.R. 11, and based on the record before us, we cannot say that the garnishment order was a final judgment and that the trial court erred in requiring the Branhams to appear for a subsequent hearing for proceedings supplemental.

■ With that said, we nevertheless conclude that the court overstepped its authority and abused its discretion when it required Quincy to seek alternative employment by submitting five applications a week. As set forth above, the purpose of proceedings supplemental is to afford the judgment-creditor relief to which it is entitled under the terms of the judgment. *See Rice v. Comm'r, Ind. Dep't of Envtl. Mgmt.*, 782 N.E.2d 1000. Here, the judgment-creditors are entitled to the payment of the money judgment rendered in their favor. Although the court is afforded discretion in proceedings supplemental, we have found no authority that supports the trial court's order requiring Quincy to seek alternate employment by submitting five applications a week. We therefore reverse this part of the court's order.

Judgment affirmed in part and reversed in part.

BARNES, J., concurs.

CRONE, J., concurs in part and dissents in part.

CRONE, Judge, concurring in part and dissenting in part.

I agree with the majority that the trial court exceeded its authority in ordering Quincy to submit five job applications per week. Therefore, I fully concur in that portion of the majority's opinion.

I respectfully disagree, however, with the majority's determination that the trial court committed no error in ordering the Branhams to pay $50 a month toward the judgment and in requiring repeated court appearances. Regarding the former, it is well settled that "[t]he *creditor* has the burden of showing that the debtor has property or income that is subject to execution." *Kirk*, 585 N.E.2d at 1369 (emphasis added). Stated differently, a creditor has the burden of showing that the debtor has property or income that is *not* subject to applicable exemptions. The majority contends that the Branhams had the burden to assert those exemptions. I believe that our supreme court's opinion in *Mims* dictates otherwise. Absent any indication that the debtor in *Mims* asserted an exemption of any sort at the proceeding supplemental, I believe that *Mims* unambiguously requires that trial courts assert exemptions on behalf of debtors who are not represented by counsel. Simply put, *Mims* says what it says, and I believe that the majority construes it far too narrowly in this case.

Furthermore, I take issue with the majority's characterization of the *Mims* requirement as a "newly established 'procedure[.]'" Op. at 352. The supreme court has neither narrowed nor disavowed *Mims* since it was decided in 1974, and the fact that some trial courts may not follow *Mims* in the workaday world does not make that case any less binding on them or on us. If our supreme court wants to abandon *Mims* and abolish the supposed procedural inefficiencies of which the majority complains, that is its prerogative. Until such time, however, all lower courts are bound to follow *Mims* and its emphasis on "fairness and practical realities." 261

Ind. at 595, 307 N.E.2d at 869. In so doing, they protect the constitutional right of unrepresented (and thus perhaps unsophisticated) debtors to "enjoy the *necessary* comforts of life[,]" such as the $2500 truck that Quincy uses for transportation in a largely rural corner of our state.[4]

The meager evidence before us strongly suggests that, notwithstanding Quincy's acquisition of the truck, the Branhams' property and income would fall within the exemptions provided by law. *See* Ind. Code § 34–55–10–2(c) (exempting, among other things, "[r]eal estate or personal property constituting the personal or family residence of the debtor ... of not more than fifteen thousand dollars ($15,000)";[5] "[o]ther real estate or tangible personal property of eight thousand dollars ($8,000)"; and "[i]ntangible personal property, including choses in action, deposit accounts, and cash (but excluding debts owing and income owing) of three hundred dollars ($300)"); Ind.Code § 24–4.5–5–105(2) (providing in pertinent part that "the maximum part of the aggregate disposable earnings[6] of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed: (a) twenty-five percent (25%) of his disposable earnings for that week; or (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage ... in effect at the time the earnings are payable [currently $7.25]; whichever is less."); *Esteb v. Enright by State*, 563 N.E.2d 139, 141 (Ind.Ct.App.1990) ("[Supplemental Security Income] benefits are exempt from any legal process brought by any creditor.") (citing 42 U.S.C. § 1383(d)(1)). I believe that it was appellees' burden to demonstrate otherwise and that they failed to carry this burden. The majority states that "it is clear from the record that the court considered the Branhams' ability to pay and found their credibility lacking." Op. at 352. Even assuming that appellees' counsel demonstrated that the Branhams were less than candid, this falls far short of showing that the Branhams in fact had property or income that is subject to execution.

Regarding the trial court's requirement of repeated court appearances, it is important to remember that "proceedings supplemental are a creditor's remedy and not the court's." *Kirk*, 585 N.E.2d at 1369. "A second order or examination of the debtor requires a showing by the creditor that new facts justifying a new order or examination have come to the knowledge of the creditor." *Id.* Or, put another way,

> "If several examinations within a short time of one another have recently taken place, then facts should be shown from which it may be inferred that the judgment creditor will obtain useful information, and the examination is not being used as a club to enforce settlement of claims which the debtor is without property to pay."

*Id.* (quoting 33 C.J.S. *Executions* § 365(3)(g) (1942)). I do not believe that appellees made such a showing here, and I do not believe that Small Claims Rule 11(C) may be used to justify the multiple status hearings scheduled by the trial

---

4. Quincy testified that he was purchasing the truck so that he "could make it back and forth to make money." Tr. at 11.

5. Quincy testified that Shannon pays their rent, which indicates that the Branhams do not own their residence. Tr. at 6.

6. "Disposable earnings" is defined as "that part of the earnings of an individual, including wages, commissions, income, rents, or profits remaining after the deduction from those earnings of amounts required by law to be withheld[.]" Ind.Code § 24–4.5–5–105(1).

court in this case.[7] As a practical matter, it is difficult to see how the trial court's order could lawfully be enforced, given that the Branhams may not be imprisoned for failing to pay the judgment and do not have identified property or income that is subject to execution.

In sum, I would reverse the trial court's order in its entirety and remand with instructions to stay further proceedings supplemental until such time as the appellees can show "new facts justifying a new order or examination."

**7.** At the conclusion of the March 30 hearing, the trial court set another status hearing for June 15, 2009.