**HERDRICH PETROLEUM CORPORATION, WhyNot Group, Inc., Jan Hackleman, William J. Herdrich, Jeff Herdrich, Robert Herdrich and Shell Oil Company, Appellants–Defendants,**

v.

**Jack RADFORD, et al., Appellees–Plaintiffs.**

No. 89A05–0108–CV–341.

Court of Appeals of Indiana.

Aug. 14, 2002.

Christopher J. Braun, Peter M. Racher, John W. Ketcham, Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Herdrich Petroleum Corporation, WhyNot Group, Inc., Jan Hackleman, William Herdrich, Jeff Herdrich and Robert Herdrich.

Larry J. Kane, Karl L. Mulvaney, James M. Hinshaw, Bingham Summers Welsh & Spilman, Indianapolis, IN, Attorneys for Shell Oil Company.

Thomas A. Barnard, Thomas F. O'Gara, Sommer & Barnard, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Appellants Herdrich Petroleum Corporation, WhyNot Group, Inc., Jan Hackleman, William J. Herdrich, Jeff Herdrich, and Robert Herdrich (collectively "Herdrich") and Shell Oil Company ("Shell Oil") [1] appeal from a trial court order allowing Dennis Dixon and Kimberly Dixon, individually and as parents of Brittany and Casey Dixon ("Dixons"), and Samuel Creech, Terri Paddock, and Byron Close ("Employees") [2] to intervene in a dismissed case. We restate the issues they raise as follows:

1) whether the trial court erred in finding it had jurisdiction to allow intervention in a dismissed case;

2) whether the trial court erred in allowing intervention as of right or permissively; and

3) whether the trial court erred in allowing intervention when the motion to intervene was not timely made.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Herdrich Petroleum is a small, family-owned business that since the early 1970s has owned or operated various service stations in the Richmond, Connersville, and Rushville areas. Its stations include a Shell Oil [3] branded gasoline station with several underground storage tanks ("USTs") commonly known as West Main Street Shell in Richmond, Indiana. Why-Not Group is a small, closely-held family company that owns several of the stations. Jan Hackleman, William J. Herdrich, Jeff

1. Herdrich and Shell Oil will be collectively referred to as "Defendants" in this opinion.

2. The Dixons and Employees will be collectively referred to as "Intervenors" in this opinion.

3. Shell Oil does not, and did not, own or operate this station or the USTs. Rather, Shell Oil supplied gasoline to Herdrich Petroleum and licensed its trademarks for use at the station. While Shell Oil is represented by separate counsel in this litigation, under Shell Oil's supply agreement, Herdrich Petroleum is contractually obligated to indemnify Shell Oil and provide for its defense in lawsuits such as this one.

Herdrich, and Robert Herdrich are all children of Herdrich Petroleum's founder and are various officers and shareholders of Herdrich Petroleum and the WhyNot Group.

On October 21, 1994, various residents who lived near the station and employees at businesses near the station smelled gasoline fumes. The next day, tank tightness tests on the station's USTs showed a breach in a fuel delivery pipe between a UST and a fuel island.[4]

Jack and Brenda Radford operated Radford's Meat Market and Deli, which was near the station. With other parties,[5] they filed a complaint on May 15, 1995, alleging the gasoline release forced them to close their business for cleanup and to destroy certain inventory because of contamination. They also alleged their children, who worked at the market, suffered respiratory and other illnesses due to the exposure to gasoline fumes while working at the market on the date of the gasoline release. The Radfords also claimed they suffered a continuing loss of goodwill because of fear of future contamination.

On October 1, 1996, the plaintiffs filed an amended complaint that stated further claims and added as defendants WhyNot Group, Inc., Jan Hackleman, Jeff Herdrich, William Herdrich, and Robert Herdrich.

On October 16, 1996, Rodney Michaels, Jerri Lynn Michaels, Mary Michaels, and Portia Warren, individually and as an unincorporated association doing business as "Little Blessings Day Care Center" (collectively the "Day Care Plaintiffs") and Stephanie L. Wright filed a motion to intervene and added Shell Oil as a defendant. After the trial court granted this motion to intervene, these parties filed a second amended complaint.

In December of 1996, Herdrich settled the claims of Phyllis Skates, Walter Skates and Lou Ann D'Amico. On February 4, 1997, the trial court signed an order approving the parties' stipulation of dismissal and dismissing these claims from the lawsuit. In January and February of 1997, Herdrich settled all claims with the Day Care Plaintiffs.[6]

On February 11, 1997, the Intervenors filed a motion to intervene, alleging they suffered various bodily injuries and property damage as a result of the 1994 fuel release. Herdrich served interrogatories and requests for production of documents upon the Intervenors on May 5, 1997. At a June 12, 1997 status conference, the trial court ordered Herdrich to file on or before June 24, 1997 a brief in opposition to the Intervenors' motion to intervene. Herdrich did not meet this deadline and re-

---

4. Herdrich responded to this spill and completed an initial on-site and off-site characterization report and submitted a corrective action plan approved by the Indiana Department of Environmental Management ("IDEM") to address the petroleum-impacted areas. Herdrich and its environmental consultants have implemented the corrective action plan's remediation system and have undertaken the cleanup in accordance with IDEM's UST requirements and oversight.

5. The May 15, 1995 complaint was styled "Jack Radford and Brenda Radford, Individually and d/b/a Radford's Meat Market & Deli; Jack Radford and Brenda Radford, as parents

and natural guardians of Rhonda Radford and Jeremiah Radford; Linda Parker and Anthony Parker, Individually and d/b/a Chili Peppers; Dan Parker; Linda Parker [sic]; Phyllis Skates; Walter Skates; and Lou Ann D'Amico v. Herdrich Petroleum Corporation".

6. Herdrich's counsel filed the stipulation of dismissal with prejudice on February 13, 1997. The trial court did not issue an order approving the stipulation and dismissing the Day Care Plaintiffs' claims until November 12, 1997.

quested an extension of time to respond to the Intervenors' motion.

In August 1997, Herdrich settled all of the claims of Linda Parker and Anthony Parker, individually and doing business as Chili Peppers, and Dan Parker. On September 8, 1997, the parties filed a stipulation of dismissal with prejudice. On September 16, 1997, the trial court issued an order approving the stipulation of dismissal and dismissing these claims.

In November 1997, Herdrich settled all of the claims of the Radford Plaintiffs. On November 12, 1997, the parties filed a stipulation of dismissal with prejudice. The same day, the trial court issued an order approving the stipulation of dismissal and dismissing these claims from the lawsuit. At this time, Herdrich had never responded to the Intervenors' motion to intervene.

On January 15, 1998, the Intervenors filed a motion for status conference. On January 28, 1998, Herdrich filed a response to the Intervenors' motion to intervene, in which it challenged for the first time the trial court's continued jurisdiction over the motion to intervene since all outstanding claims had been resolved and dismissed from the lawsuit. The Intervenors filed a reply to Herdrich's response on February 9, 1998. On July 9, 1998, the trial court directed the parties to brief the issues of: 1) whether the trial court had jurisdiction to rule on the motion to intervene; and 2) whether the Intervenors had a right to intervene under Trial Rule 24. After the parties had filed these briefs, the trial court heard oral argument on January 27, 1999 and requested post-hearing submissions by the parties. On October 4, 1999, the trial court entered an order allowing the Intervenors to intervene in the dismissed lawsuit. The trial court held that it had jurisdiction to rule on the motion to intervene and that the Intervenors were entitled to intervene both as of right and permissively.

## DISCUSSION AND DECISION

### 1. Jurisdiction

■ Herdrich initially contends the trial court did not have jurisdiction to grant the Intervenors' motion to intervene because after the trial court's November 12, 1997 orders of dismissal, there was no lawsuit in which the Intervenors could intervene. We agree with the trial court's determination that Herdrich is estopped from challenging the trial court's jurisdiction in this matter.

■ A party may be estopped from challenging the trial court's jurisdiction. *In re the Paternity of T.M.Y.*, 725 N.E.2d 997, 1003 (Ind.Ct.App.2000). A party shall be estopped from challenging the court's jurisdiction if it has voluntarily availed itself or sought the benefits of the court's jurisdiction. *Jennings v. Jennings*, 531 N.E.2d 1204, 1206 (Ind.Ct.App.1988). In addition, a party's course of conduct might result in the application of an estoppel. *Paramo v. Edwards*, 563 N.E.2d 595, 598–99 (Ind.1990). Whether an estoppel occurs depends on the facts and circumstances of each case. *Liberty Nat'l Bank and Trust Co. v. Payton*, 602 N.E.2d 530, 534 (Ind.Ct. App.1992).

In the case before us, Herdrich chose for eleven months to ignore or do nothing about the Intervenors' motion to intervene. When the trial court set deadlines for Herdrich to respond to the motion to intervene, Herdrich sought two continuances. In its order granting the motion to intervene, the trial court noted that Herdrich "not only knew about the Intervenors' petition to intervene, but actually requested the issue of intervention be placed on hold until after settlement." (App. at 34.) The trial court further stated "since [Herdrich]

failed to adhere to the Court's briefing schedule, thereby inducing the Court to refrain from ruling on the issue of intervention, [Herdrich] should not be heard to challenge this Court's continuing jurisdiction." (*Id.* at 37.) We agree. The trial court did not abuse its discretion in finding that Herdrich's actions should estop it from challenging the trial court's continuing jurisdiction over this case.

### 2. Intervention

■■ Herdrich argues the trial court erred in granting the Intervenors' motion to intervene either as of right or as a matter of permissive intervention. The grant or denial of a petition to intervene is within the discretion of the trial court. *Hiles v. Null*, 716 N.E.2d 1003, 1004 (Ind. Ct.App.1999). We review a trial court's order allowing intervention for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or reasonable and probable inferences to be drawn therefrom. *Developmental Disabilities Residential Facilities Council v. The Metro. Dev. Comm'n of Marion County*, 455 N.E.2d 960, 965 (Ind.Ct.App.1985).

> Trial Rule 24 provides, in relevant part: (A) Intervention of Right. Upon timely motion anyone shall be permitted to intervene in an action: ...
> (2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

■ Under Indiana law, persons seeking intervention as a matter of right must show: 1) that they have an interest in the subject of the action; 2) that the disposition of the action may as a practical matter impede their protection of that interest; and 3) that representation of their interest by existing parties is inadequate. *In re Remonstrance Appealing Ordinance*, 737 N.E.2d 767, 769 (Ind.Ct.App.2000). Whether a particular factual situation satisfied this three-part test is within the discretion of the trial court. *Developmental Disabilities Residential Facilities Council*, 455 N.E.2d at 963–64.

■ In this case, the trial court found that the Intervenors had an interest related to the subject of the original lawsuit because of the interest in eliminating gasoline fumes from their property and the continuing health threat from the fumes that resulted from Herdrich's release of gasoline. Despite Herdrich's argument to the contrary, we defer to the trial court's discretion in finding that this factual situation created an interest in the original action sufficient to justify intervention as of right. The trial court did not abuse its discretion by finding the Intervenors were entitled to intervene as a matter of right.

Further, the trial court found that the Intervenors were entitled to permissive intervention under Trial Rule 24, which provides in relevant part:

> (B) Permissive Intervention. Upon timely filing of his motion anyone may be permitted to intervene in an action: (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

■ Indiana courts have routinely granted permissive intervention when the applicant's claim or defense has a question

of law or fact in common with the underlying action. See *City of New Haven v. Chemical Waste Management of Indiana, L.L.C,* 701 N.E.2d 912, 922 (Ind.Ct.App. 1998), *trans. denied.* In this case, the trial court found the Intervenors' claims had twenty questions of fact and six questions of law in common with the original parties' claims and defenses. There can be no question that the Intervenors' claims share with the claims presented in the underlying action both common questions of fact and common questions of law.

Herdrich maintains that the trial court erred by failing to consider the undue delay or prejudice to Herdrich when it allowed the Intervenors to intervene in this matter. We do not agree. Herdrich argues that the trial court failed to consider that the underlying action had been resolved for nearly two years by the time the trial court allowed intervention. However, we must note that Herdrich did not seem overly concerned about delay when it failed for nearly a year to timely respond to the Intervenors' motion to intervene. We cannot say that the trial court's action caused Herdrich any undue delay.

Further, Herdrich contends the trial court erred by refusing to consider the undue prejudice to Herdrich resulting from intervention in this case. Herdrich argues only that the Intervenors should not be allowed to claim the benefit of the filing date of the original complaint. Herdrich does not show any undue prejudice it faces as a result of the trial court's allowing intervention. The trial court did not abuse its discretion.

### 3. Timeliness

 Herdrich finally argues that the trial court erred in granting intervention because the Intervenors' motion to intervene was not timely made. Herdrich maintains that the Intervenors "clearly

knew or should have known" of the gasoline release and/or the Radfords' lawsuit against Herdrich. The requirement of timeliness in intervention is largely left to the trial court's discretion. *Moldex, Inc. v. Ogden Health Prod.,* 489 N.E.2d 130, 132 (Ind.Ct.App.1986), *reh'g denied.* After somewhat extensive analysis, the trial court found that the Intervenors' motion to intervene met the timeliness test. The trial court noted our holding in *Bryant v. Lake County Trust Co.*:

> Because the concept of timeliness is flexible and its application depends upon the facts of each case, its determination must rest within the sound discretion of the trial court. However, the requirement of timeliness should not be employed as a tool to sanction would-be intervenors who are tardy in making their application. Rather, it is intended to insure that the original parties should not be prejudiced by an intervenor's failure to apply sooner, and that the orderly processes of the court are preserved.

166 Ind.App. 92, 101, 334 N.E.2d 730, 735 (1975), *reh'g denied.*

Herdrich has not shown it was prejudiced because the Intervenors did not file their motion to intervene earlier. Further, Herdrich has not shown that the timing of the Intervenors' motion to intervene disturbed the orderly processes of the trial court. Because we find no abuse of discretion, we uphold the trial court's holding.

Affirmed.

RILEY and VAIDIK, JJ., concur.