ATTORNEYS FOR APPELLANT
Karl L. Mulvaney
Dennis F. Cantrell
Nana Quay-Smith
Candace L. Sage
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Peter Campbell King
J. Kevin King
Columbus, Indiana

# In the
# Indiana Supreme Court

---

No. 03S01-0505-CV-255

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

*Appellant (Proposed Intervenor
below),*

v.

RUTH ESTEP, PERSONAL REPRESENTATIVE
OF THE ESTATE OF EWING DAN ESTEP, AND
ASSIGNEE OF RIGHTS OF JAMES D. PERKINS,

*Appellee (Plaintiff below).*

---

Appeal from the Bartholomew Circuit Court, No. 03C01-0008-CT-1117
The Honorable Stephen R. Heimann, Judge

---

On Petition To Transfer from the Indiana Court of Appeals, No. 03A01-0401-CV-30

---

**September 25, 2007**

**Shepard, Chief Justice.**

In this motor vehicle collision case, defendant's insurance carrier offered to pay policy limits even as it continued to defend its insured. Plaintiff refused the offer. A jury awarded damages above policy limits, and the carrier immediately paid on its policy.

In proceedings supplemental, the trial court ordered the insured to assign any cause of action he might have against his insurer and directed plaintiff's counsel to prepare the assignment. The assignment became a global one, which plaintiff deployed to sue both the carrier and defendant's personal attorney. We held fifteen years ago, however, that assigning claims against lawyers is impermissible. Most of the reasons for that rule also pertain to involuntary assignments such as the one before us.

## Facts and Procedural History

James Perkins was driving his pickup truck through Columbus, Indiana, when he hit the rear of Dan Estep's motorcycle. Estep suffered devastating injuries.[1] In August 2000, Estep filed a personal injury action against Perkins.

Perkins' insurer, State Farm Mutual Automobile Insurance Company, retained attorney Michael Stephenson to defend him. Perkins also retained his personal attorney, Jerry L. Susong, as Stephenson's co-counsel. Estep died before trial, and his Estate was substituted as plaintiff.

Perkins' automobile policy with State Farm had a $50,000 per person policy limit. State Farm repeatedly offered to pay Estep the $50,000 policy limit, but Estep refused to accept the offer or submit a demand.

Estep's claim went to trial, and in March 2002 the jury awarded Estep's Estate $650,000 in compensatory damages and $15,000 in punitive damages. The day after the verdict, State Farm paid Perkins' full policy limit of $50,000 to the Estate.

In April 2002, pursuant to Trial Rule 69(E), the Estate initiated proceedings supplemental to execution against Perkins, seeking satisfaction of the $615,000 that remained unpaid.[2]

---

[1] As a result of this collision, Perkins was convicted of operating a vehicle while intoxicated causing serious bodily injury, a class D felony. See Perkins v. State, 812 N.E.2d 836, 837 (Ind. Ct. App. 2004).

[2] In accordance with standard practice, the Estate filed these proceedings supplemental in the same court and under the same cause number as the original proceeding against Perkins. (Appellant's App. at 66, 70-71.)

2

Stephenson withdrew in July 2002, concluding he had completed his defense obligations under Perkins' insurance policy. Susong continued to represent Perkins. Subsequent to Stephenson's withdrawal, the Estate sought an order directing Perkins to assign to it any cause of action Perkins might have against State Farm. State Farm was not a party to the proceedings supplemental and did not receive notice that the Estate was seeking the assignment.[3]

When requested to assign any potential bad faith claim he might have against State Farm, Perkins refused and denied that there was any basis for such a claim. Susong said on Perkins' behalf that State Farm

> defended [Perkins] all the way through. I personally would not . . . open[] the insurance company up to defending another case that their own insured does not wish to bring, without some showing of fact that they did do something. . . . I'm not aware of any bad faith dealing on [State Farm's] part[].

(Hr'g Tr. at 7.)

Over Perkins' objection, the court ordered Perkins to assign to the Estate any potential bad faith claim Perkins might have against State Farm. The assignment Perkins presented turned out to be even broader. It assigned to the Estate *all* potential "claims, demands, and cause or causes of action" arising out of the Estate's personal injury action against Perkins, including a specific assignment of any potential cause of action against State Farm.

State Farm first received notice of the assignment in September 2003, when the Estate, as Perkins' assignee, sued State Farm in an Illinois state court asking $615,000 in damages – the amount by which the Indiana judgment against Perkins exceeded his insurance coverage.[4] The complaint alleged that State Farm breached its duty of good faith owed to Perkins by failing to provide Perkins with a conflict-free defense. Asked at oral argument what indication there was

---

[3] At the time of Stephenson's withdrawal, there was no indication that Perkins had any claim against State Farm or that the Estate sought assignment of any potential claim against State Farm.

[4] Since a proceeding supplemental is merely an extension of the underlying action, the merits of any assigned claim should not be tried in this limited forum. See First Bank of Whiting v. Sisters of Mercy Health Corp., 545 N.E.2d 1134, 1141 (Ind. Ct. App. 1989) (proceeding supplemental not appropriate forum to try a judgment creditor's cause of action against a garnishee-defendant); Protective Ins. Co. v. Steuber, 175 Ind. App. 139, 370 N.E.2d 406 (1977) (garnishee entitled to change of venue where trial likely).

that State Farm had acted in bad faith, counsel replied that there was an insurance policy, that it facially covered the claim, and that a judgment was entered against the insured.[5]

The Estate also sued Perkins' personal attorney Susong in the Illinois complaint, claiming Susong "actively participated" in Perkins' defense and should have alleged to Perkins that Stephenson had a conflict of interest. Stephenson was not named as a defendant.

State Farm then moved to intervene in the Indiana proceedings supplemental and asked that the order compelling Perkins' assignment be vacated. The trial court denied both motions without comment or findings. State Farm appealed from these denials.

The Court of Appeals held that State Farm was entitled to notice and an opportunity to intervene in the proceedings supplemental. State Farm Mut. Auto. Ins. Co. v. Estep, 818 N.E.2d 114, 125-26 (Ind. Ct. App. 2004).[6] The Court of Appeals further held that a court hearing a proceeding supplemental could force assignment of any claim Perkins had against State Farm, but only if the court first determined that a viable claim existed. Id. We granted transfer. State Farm Mut. Auto. Ins. Co. v. Estep, 831 N.E.2d 748 (Ind. 2005).

## I. Assignability in General

Under early common law, hardly any chose in action was assignable. 3 Samuel Williston, A Treatise on the Law of Contracts § 405, at 7 (3d ed. 1960). Both Lord Coke and

---

[5] The complaint also alleged fraud, constructive fraud, and breach of contract against State Farm. All counts relied on State Farm's alleged failure to provide Perkins a conflict-free defense. The claim of conflict rested on Stephenson's unsuccessful attempt to withdraw his representation after he had trouble gaining Perkins' attendance at hearings. Stephenson's motion to withdraw was denied on October 8, 2001, and Stephenson continued to prepare for trial.

[6] We agree that State Farm should have been permitted to intervene. The Court of Appeals concluded State Farm had a right to intervene pursuant to Trial Rule 24(A), but we conclude instead that State Farm should have been permitted to intervene pursuant to Rule 24(B). A party may be permitted to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." Ind. Trial Rule 24(B)(2). Perkins argued during the proceedings supplemental that he had no basis for any bad faith claim against State Farm and thus had nothing to assign. (Appellant's App. at 130.) Upon receiving notice of the assignment, State Farm moved promptly to intervene in the proceedings supplemental, advancing an identical defense as regards the involuntary assignment. (Id. at 124-27.)

4

Blackstone argued that assignment constituted champerty and maintenance, which were discouraged by the "'wisdom and policy of the sages and founders of our law.'" Id. (quoting Lampet's Case (Eng.) 10 Coke, 46a, 48a). See also Draper v. Zebec, 219 Ind. 362, 372, 37 N.E.2d 952, 956 (1941) ("In Blackstone's time it was thought that many, for the furtherance of pretended rights, conveyed some interest therein to great men in order to gain their support and influence over the courts in the interests of their cause.").[7] Discounting the fear of maintenance, others argued that assignment was barred by the doctrine of privity. J.B. Ames, The Disseisin of Chattels: Inalienability of Choses in Action, 3 Harv. L. Rev. 337, 339 & n.2 (1890) (noting that rule barring assignments predated laws against maintenance and was justified in other European countries on grounds that such personal rights were non-transferable). The intangible nature of a chose in action and the lack of commercial necessity are also credited as contributing to the non-assignment rule. 4 Arthur Corbin, Corbin on Contracts: A Comprehensive Treatise on the Rules of Contract Law § 856, at 403 (1963).

Whatever the reason for this rule, a variety of forces combined over the centuries to work its slow reversal. The chose in action based on contract was the first to become assignable, primarily out of economic necessity. Next, with the de-emphasis of privity, the passage of English statutes, and the demise of laws against champerty, choses in action for torts against personal property slowly gained the power of assignment. The assignment of tort suits growing out of an injury to the person, however, or for wrongs done to the person, reputation, or feelings of the injured party, remained unassignable.

The common law in most states today, including Indiana, teaches that any chose in action that survives the death of the assignor may be assigned. "'[A]ny cause or right of action may be assigned that, in accordance with the rules relating to the survivability of causes of action . . . would, on the death of the assignor, survive to his legal representative.'" Armstrong v. Ill. Bankers Life Ass'n, 217 Ind. 601, 619, 29 N.E.2d 415, 422 (1940) (quoting 6 C.J.S. Assignments § 30). An English statute on the survival of actions enacted in 1330 is responsible

---

[7] Overruled in part, O'Donnell v. Krneta, 238 Ind. 582, 154 N.E.2d 45 (1958).

for this connection between survival and assignment.[8] As one might expect, this rule derived from an English statute enacted more than a century before the invention of movable type is not tightly enforced.

It seems anachronistic today to resolve the issue of assignability of a chose in action by deciding whether such a claim would survive the client's death. Instead, as we said in Picadilly, Inc. v. Raikos, 582 N.E.2d 338, 341 (Ind. 1991), "Assignment should be permitted or prohibited based on the effect it will likely have on modern society, and the legal system in particular." This is a question properly within our purview as common law judges.

## II. Legal Malpractice Chose in Action

In Picadilly, we held that legal malpractice claims are not assignable. Two primary policy concerns drove that conclusion: "the need to preserve the sanctity of the client-lawyer relationship, and the disreputable public role reversal that would result during the trial of assigned malpractice claims." Id. at 342. We observed that assigning such claims would almost certainly result in the "merchandizing [of] such causes of action . . . which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers." Id. Balancing the advantages and disadvantages of such assignments, we barred assignment of legal malpractice claims, noting clients may still make these claims directly against their attorneys, but they cannot assign their choses in action. Id. at 345.

Perkins signed a general assignment to the Estate that included an assignment of any claim Perkins might have against his personal attorney Susong. The Estate then used the assignment to sue Susong, alleging negligence and breach of duty to defend Perkins. The complaint contended that Susong breached his duty of care owed to Perkins by failing to inform

---

[8] 4 Edw. 3, c. 7 (1330). That statute permitted the executor of a decedent's estate to sue on actions for trespass to chattels owned by the decedent. Courts interpreting this statute came to view the executor as the assignee of the decedent's chose in action. See W.W. Allen, Annotation, Assignability of Claim in Tort for Damage to Personal Property, 57 A.L.R.2d 603, 619 (1958).

him that Stephenson had a conflict and by failing to require State Farm to appoint alternative counsel.

Although Perkins could directly file a complaint against Susong, or Stephenson for that matter, Perkins cannot assign this opportunity against either of his attorneys. As we explained in Picadilly, such assignments would likely be very harmful to the lawyer-client relationship. 582 N.E.2d at 345.[9] Perkins' assignment of this claim is invalid.

### III. Insured's Chose in Action Against Insurer

To be sure, an insured may *directly* assert a claim against an insurer for breach of the duty of good faith. Erie Ins. Co. v. Smith ex rel. Hickman, 622 N.E.2d 515, 519 (Ind. 1993) ("recognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate"). This duty and resulting cause of action arise out of the insurance contract between the insured and the insurer. Menefee v. Schurr, 751 N.E.2d 757, 760 (Ind. Ct. App. 2001) (tort arises from "special relationship" between insured and insurer).

On the other hand, like virtually every other American jurisdiction, Indiana follows the Direct Action Rule, prohibiting a third party or judgment creditor from directly suing a judgment debtor's insurance carrier to recover an excess judgment. See, e.g., City of South Bend v. Century Indem. Co., 821 N.E.2d 5, 9-10 (Ind. Ct. App. 2005) ("The 'direct action rule' bars a party from pursuing a claim based on the actions of an insured directly against the insurer.");[10] Menefee, 751 N.E.2d at 761 (any excess liability of insurance carriers arises out of relationship between insurer and insured, and insurance carrier owes no duty to third party); Bennett v. Slater,

---

[9] Allowing a client to assign his chose in action against his attorney would weaken the attorney's duty of loyalty and confidentiality. In addition, this could become a dangerous "bargaining chip in the negotiation of settlements— particularly for clients without a deep pocket. An adversary might well make a favorable settlement offer to a judgment-proof or financially strapped client in exchange for the assignment of that client's right to bring a malpractice claim against his attorney." Picadilly, 582 N.E.2d at 342-43.

[10] The direct action rule is "well-settled" in Indiana, subject to a limited exception "[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such suit is not a direct action against an insurer." City of South Bend, 821 N.E.2d at 10 (quotation omitted).

7

154 Ind. App. 67, 289 N.E.2d 144 (1972) (possible tort action available for insured to sue insurer directly, not available to third party).

The direct action rule is so widely embraced as the result of shared conclusions about the adverse consequences flowing from third parties suing carriers directly. Menefee, 751 N.E.2d at 761 n.2 (noting, in 2001, all but four states followed the direct action rule). The California Supreme Court once abandoned the direct action rule, then reversed itself after a decade of "adverse social and economic consequences." Moradi-Shalal v. Fireman's Fund Ins. Co., 758 P.2d 58, 66-68 (Cal. 1988) (overruling Royal Globe Ins. Co. v. Superior Court, 592 P.2d 329 (Cal. 1979)). The California court concluded that permitting third-party direct actions against insurance companies promoted multiple-litigation, unwarranted settlement demands, escalating insurance costs, and serious conflicts of interest between the insureds and their insurers:

> [Allowing direct suits by third parties] promotes multiple litigation, because . . . [it] encourages . . . two lawsuits by the injured claimant: an initial suit against the insured, followed by a second suit against the insurer for bad faith refusal to settle. . . . [It also] encourage[s] unwarranted settlement demands by claimants, and . . . coerce[s] inflated settlements by insurers seeking to avoid the cost of a second lawsuit and exposure to a bad faith action. . . . [It may also lead to] escalating insurance costs to the general public resulting from insurers' increased expenditures to fund coerced settlements . . . . [Finally it] create[s] a serious conflict of interest for the insurer, who must not only protect the interests of its insured, but also must safeguard its own interests from the adverse claims of the third party claimant. This conflict disrupts the settlement process and may disadvantage the insured.

Id. at 66-67 (citations omitted).

Our Court of Appeals correctly recognized that involuntary assignment of claims against carriers whose insureds do not believe they have been wronged by their insurance companies was inconsistent with the direct action rule. And it would produce roughly the same results.

First, permitting these forced assignments would certainly result in multiple litigation, as it would understandably become ordinary practice for judgment creditors to pursue insureds' insurance carriers where insureds cannot themselves fulfill the judgment.

Second, these assignments would change adversely the dynamic in settlement negotiations. A new consideration in the bargaining – and one that would affect whether people choose to exercise their right to trial – would be the possibility of an excess coverage claim and the cost of litigating it, even successfully. This realistic concern would exacerbate potential conflicts of interest between the insured and the insurer, as the insurer would be forced to greater vigilance in the course of simultaneously protecting both its interest and the insured's interest.

Third, the increased risk and cost would be borne by insureds who never make a claim and found their insurance service satisfactory. Allowing judgment creditors to force assignments in an attempt to recover judgments above the insured amount would render meaningless the bargains made in the marketplace between millions of insureds and hundreds of insurers about the amounts of policy coverage and the premiums necessary under standard underwriting principles to cover those policy amounts.

This case illustrates sharply how consumer agreements between insureds and their insurers would be disregarded as judgment creditors attempt to recover amounts not insured for. Perkins and State Farm agreed to a $50,000 policy, and Perkins – and other consumers – paid premiums based on State Farm's calculation of risk. State Farm repeatedly offered to pay full policy limits to the Estate, and indeed, paid policy limits the day after judgment. Nonetheless, the Estate forced an assignment of Perkins' alleged cause of action against State Farm in an attempt to recover an additional $615,000. The $615,000 excess judgment was clearly not part of State Farm's bargained-for risk based on a $50,000 consumer agreement.

More importantly, however, State Farm's increased risk would affect more than just Perkins' premiums. It would affect all the drivers who never experience a collision, drivers who think they are paying for a stated amount of coverage. Their *real* coverage would extend to some higher number that is sufficient to cover excess payouts and, of course, additional legal costs associated with litigating the proper amount of the payout above the stated limits. In effect, drivers who never have an accident would have to pay additional premiums to cover the requests of claimants who think the insureds' carriers did not do as good a job for the insureds as the insureds themselves think they did.

9

The trial court's order requiring Perkins' forced assignment of his chose in action against State Farm was error. This does not in any way prohibit Perkins from directly suing State Farm or from *voluntarily* assigning his chose in action.[11]

### Conclusion

We reverse the order issued during proceedings supplemental forcing Perkins' assignment of any potential chose in action against State Farm and hold invalid any assignment by Perkins against his attorneys.

Sullivan and Rucker, JJ., concur.
Boehm, J., concurs and dissents with separate opinion in which Dickson, J., joins.

---

[11] See, e.g., Economy Fire & Casualty Co. v. Collins, 643 N.E.2d 382, 384 (Ind. Ct. App. 1994) (insured's estate *voluntarily* entered into assignment agreement with plaintiff, assigning estate's cause of action against insurer, but releasing estate from any future obligation).

**Boehm, Justice, concurring in part and dissenting in part.**

I agree with the majority that under this Court's precedent in <u>Picadilly, Inc. v. Raikos</u>, 582 N.E.2d 338 (Ind. 1991), Perkins's legal malpractice claims against his attorney Jerry L. Susong are not assignable. I also agree with the majority's brief statement that because proceedings supplemental are "merely an extension of the underlying action, the merits of any assigned claim should not be tried in this limited forum."

I dissent in part because I do not agree with the majority that State Farm should have been allowed to intervene in the proceeding supplemental. The Court of Appeals concluded that State Farm had a right to intervene pursuant to Indiana Trial Rule 24(A). The majority does not directly address intervention as of right but finds permissive intervention proper. I do not agree that State Farm should have been permitted to intervene pursuant to Indiana Trial Rule 24(B). I also disagree with the majority's view that the trial court erred in ordering assignment of Perkins's claims against State Farm.

### I. Jurisdiction of Proceedings Supplemental over the Merits of an Assigned Claim

I agree with the majority that a proceeding supplemental is not the proper forum to resolve the merits of an assigned claim. The majority did not advance its reasoning supporting this conclusion. I take this opportunity to do so because I believe some of the reasons for this conclusion are also relevant to the propriety of permitting State Farm to intervene in this case.

The resolution of the merits of an assigned claim in proceedings supplemental is inconsistent with the statutory scheme governing proceedings supplemental. Before the adoption of the Indiana Trial Rules in 1970, it was well established that proceedings supplemental were filed as new and independent civil actions. <u>Baker v. State ex rel. Mills</u>, 109 Ind. 47, 52, 9 N.E. 711, 713 (1887); <u>Burkett v. Holman</u>, 104 Ind. 6, 11–12, 3 N.E. 406, 409–10 (1885). Indiana Trial Rule 69(E) effected a substantial change in the law. The Civil Code Study Commission's comment on Trial Rule 69(E) reads in pertinent part:

> Rule 69(E) retains the basic statutes upon [proceedings supplemental] but introduces simpler pleadings and procedure. However, this rule makes some significant changes. For one thing, the court rendering judgment retains venue or

> jurisdiction over proceedings supplemental, contrary to prior law which fixed venue at the defendant's residence. Relief is allowed by motion, and the order to appear in proceedings supplemental is granted ex parte without hearing, thus clarifying present procedures. Necessarily, this means that the remedy is merely a continuation of the original action both in name and in cause number.

Indiana Rules of Civil Procedure: Proposed Final Draft 262 (1968). In the years since Trial Rule 69(E) was adopted, Indiana courts have routinely held that proceedings supplemental are merely extensions of the underlying action, not separate and independent actions. See, e.g., Arend v. Estler, 737 N.E.2d 1173, 1175 (Ind. Ct. App. 2000); Citizens Nat'l Bank v. Harvey, 167 Ind. App. 582, 589, 339 N.E.2d 604, 608 (1976). Consequently, proceedings supplemental serve the limited purpose of determining whether an asset is in the judgment debtor's possession or subject to the judgment debtor's control and can be attached to satisfy the judgment. Kirk v. Monroe County Tire, 585 N.E.2d 1366, 1368 (Ind. Ct. App. 1992).

Proceedings supplemental to execution have historically been summary in nature and have facilitated the timely collection of unsatisfied judgments. Lewis v. Rex Metal Craft, Inc., 831 N.E.2d 812, 820 (Ind. Ct. App. 2005). But proceedings supplemental have refused to serve as forums for hearing new and independent causes of action that the debtor may have against third parties. See First Bank of Whiting v. Sisters of Mercy Health Corp., 545 N.E.2d 1134, 1141 (Ind. Ct. App. 1989), trans. denied (concluding that a proceeding supplemental is not an appropriate forum to try a judgment creditor's cause of action against a garnishee-defendant). Thus, once assignments of actions were made, there was nothing left for the proceedings supplemental court to do. Trial Rule 69(E) authorizes the court in proceedings supplemental to "apply" property to the judgment as provided in the statute. The statute authorizes the proceedings supplemental court to order any non-exempt "property, income, or profits of the judgment debtor . . . to be applied to the satisfaction of the judgment." Ind. Code § 34-55-8-7(a) (2004). It does not purport to confer jurisdiction over the merits of the assigned claim.

There are also practical reasons why the merits of an assigned claim should not be tried in proceedings supplemental. There is no jury in a proceeding supplemental, and one of the parties may be entitled to a jury on the merits of the claim. In this case, the merits of the judgment debtor's claim against State Farm are at least somewhat related to the claim that resulted in the judgment that the Estate seeks to execute. That is not always the case. For example, resolution

of an unliquidated tort claim may entail a variety of issues inappropriate for the court that created the judgment. In addition, the claim may turn on witnesses or other evidence that are difficult or impossible to secure in the forum giving rise to the judgment. Perhaps more importantly, Trial Rule 69(E) contemplates expedited procedures that may be unfair to resolution of the merits on an unliquidated claim. To resolve these inherent tensions, either the claim will be tried in a truncated way or the proceeding supplemental will be converted into a full-blown trial. There is no reason to choose either of these undesirable alternatives. Requiring the matter to be tried as a freestanding independent lawsuit avoids both.

## II. Intervention

In a footnote the majority states that State Farm should have been permitted to intervene pursuant to Trial Rule 24(B). The majority does not directly address the holding of the Court of Appeals that State Farm was entitled to intervene as of right. For the following reasons, I conclude that intervention, whether of right or permissive, was improper, and the trial court properly denied State Farm's motion.

Motions to intervene as a matter of right are governed by Trial Rule 24(A). Persons seeking to intervene as a matter of right pursuant to Trial Rule 24(A) "must show (1) that they have an interest in the subject of the action; (2) that the disposition of the action may as a practical matter impede their protection of that interest; and (3) that representation of their interest by existing parties is inadequate. Herdrich Petroleum Corp. v. Radford, 773 N.E.2d 319, 324 (Ind. Ct. App. 2002), trans. denied. Whether a particular factual situation satisfies this three-part test is within the trial court's discretion. Id.

If the merits of Perkins's assigned claim against State Farm were properly before the proceedings supplemental court, presumably State Farm would be entitled to intervene. However, the "subject matter of the action" in the proceedings supplemental was limited to the question of whether to assign Perkins's potential claim against State Farm. That subject matter did not include an evaluation of the merits of the assigned claim. State Farm claims an interest in the question of who, as between the Estate and Perkins, had the right to bring a bad faith claim. In support of this argument, State Farm cites the statement of Perkins's attorney who states that Perkins knew of no evidence that would support a bad faith claim against State Farm:

13

> I was just saying that I would not have Mr. Perkins voluntarily agree to an assignment to bring in a third party on the basis that there may be some reason that they owe something that we have no objection to. They defended him. We discussed that considerably as far as they defended him far beyond and they had a suit separate which the court here can take notice of, as far as bringing them into the suit. They defended it all the way through. I personally would not be party to opening the insurance company up to defending another case that their own insured does not wish to bring, without some showing of fact that they did do something. Because I'm not aware of any bad faith dealing on their parts . . . . But personally on his behalf I would not advise him nor have him voluntarily grant an assignment that would open up a third party to a law suit." [Transcript 9/16/02 Hearing pp 7-8].

From this statement, State Farm infers that Perkins did not intend to bring a lawsuit for bad faith against State Farm. State Farm reasons that it was interested in the assignability of Perkins's claim because if there were no assignment the only party entitled to bring suit (Perkins) would not have sued. I do not believe that State Farm has stated a cognizable interest under Trial Rule 24(A). In my view, State Farm has merely alleged an interest in not being sued. Standing alone this is insufficient to establish that a would-be-intervenor is "interested" in the subject matter of an action.[12]  In simple terms, a party cannot sue just to prevent the opponent from asserting a claim; the defense of the claim is the means to assert that interest. And once the issue is in court in one forum, a declaratory judgment in another court should be denied on equitable principles.

The authority cited by State Farm does not dictate a contrary result. Indiana courts have recognized that insurers have a right to intervene in tort actions between the insured and an underinsured motorist. See, e.g., Westfield Ins. Co. v. Axsom, 684 N.E.2d 241, 244 (Ind. Ct. App. 1997); Vernon Fire & Cas. Ins. Co. v. Matney, 170 Ind. App. 45, 50-51, 351 N.E.2d 60, 64 (1976). These decisions have recognized that insurers have a cognizable interest warranting intervention in the tort actions between the insured and an underinsured tortfeasor because the underinsured motorist's liability to the insured is "inseparably tied to the legal liability" of the insurer in subsequent contract litigation with the insured. Axsom, 684 N.E.2d at 244. In

---

[12] See, e.g., Laube v. Campbell, 215 F.R.D. 655, 657 (M.D. Ala. 2003) (finding that corrections officers were not entitled to intervene as of right under Rule 24 of the Federal Rules of Civil Procedure in an ongoing lawsuit because they merely alleged that the lawsuit exposed them to a speculative risk of future civil and criminal liability); Bolden v. O'Connor Cafe of Worcester Inc., 734 N.E.2d 726, 731, 735 n.17 (Mass. App. Ct. 2000) (stating that "having to engage in subsequent litigation is not, in and of itself, an impairment to a proposed intervener's interest which justifies intervention" under statute requiring a would-be-intervenor to "claim an interest relating to the property or transaction which is the subject of the litigation").

contrast, the question of whether to assign Perkins's bad faith claim does not involve any determination that State Farm is liable on this claim.

State Farm also does not satisfy the other two requirements of intervention as of right. Trial Rule 24(A) provides for intervention if "the disposition of the action may as a practical matter impair or impede [the would-be-intervenor's] ability to protect his interest." State Farm argues that if it is not allowed to intervene and challenge the assignment in the Indiana proceedings supplemental, it would be barred by estoppel principles from challenging the validity of the assignment in the Illinois litigation. According to State Farm, if it objected to the assignment for the first time in the Illinois bad faith litigation, the Illinois court would deem those objections a collateral attack on a final Indiana judgment and hold that State Farm waived its right to object by not intervening in the proceedings supplemental to set the assignment aside. I believe this argument is without merit.

Under the Full Faith and Credit Clause of the Constitution of the United States, a judgment of an Indiana court is entitled to the same effect in another state that it would be given in Indiana. See, e.g., Baker by Thomas v. GMC, 522 U.S. 222, 233 (1998) ("A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."); Tom-Wat, Inc. v. Fink, 741 N.E.2d 343, 347 (Ind. 2001) ("Under the Full Faith and Credit Clause of the Constitution of the United States, the courts of this state are obligated to enforce a judgment of the courts of a sister state."). A judgment is binding in favor of or against parties to the proceedings in which it is rendered and their privies. Montana v. United States, 440 U.S. 147, 153-54 (1979). It is also well settled that, with certain exceptions, the doctrine of res judicata generally does nothing to affect the rights of those who are neither parties nor in privity with a party. United States v. Clark County, Ind., 113 F. Supp. 2d 1286, 1291 (S.D. Ind. 2000). As I see it, State Farm was not a proper party to the proceedings supplemental. Nor is State Farm in privity with Perkins as to any issue of Perkins's claim against State Farm. Accordingly, State Farm should not be estopped from raising the validity of an assigned claim in the Illinois litigation.

15

State Farm also argues that its interests were not adequately represented by Perkins.  This is true, but if State Farm is denied intervention in this proceeding, State Farm would remain free to raise whatever defenses it has to the pending claim in Illinois.  These include its contention that the claim has no merit and that the claim is not assignable.  In sum, the trial court properly rejected State Farm's motion to intervene under Trial Rule 24(A).

Much of the same reasoning supports the trial court's decision to deny permissive intervention under Trial Rule 24(B).  Trial Rule 24(B) explicitly states that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  We therefore review a trial court's denial of a motion for permissive intervention for abuse of discretion.  Herdrich, 773 N.E.2d at 324.  I believe the trial court was not only within its discretion but was correct.

The text of Trial Rule 24 reveals that it does not contemplate intervention in proceedings supplemental, whether as of right or permissive, except by a potential garnishee.  Indiana Trial Rule 24(C) applies to intervention as of right and permissive intervention.  It states

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5.  The motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought.  Intervention after trial or after judgment for purposes of a motion under Rule 50, 59, or 60, or an appeal may be allowed upon motion.

The rule is specific as to the post-judgment circumstances under which a new party can intervene.  Each of the listed trial rules (50, 59, and 60) contemplates a motion attacking the merits of the original decision, and none deals with addressing collateral issues.  Specifically, Trial Rule 24(C) makes no mention of Trial Rule 69, which governs proceedings supplemental.  Allowing intervention in proceedings supplemental would allow third parties to inject new issues into a forum designed to afford only a summary procedure.  The merits of such a claim should be given a full hearing, including any rights to demand a jury or change of judge, and the other incidents of a trial of any newly presented issue.  The reasons identified in Part I to deny jurisdiction over the merits of the assigned claim equally dictate denial of intervention to litigate the assignability in proceedings supplemental.

Because I believe the trial court was correct in denying State Farm's motion to intervene, I must address an additional argument raised by State Farm but not addressed by the majority. State Farm argues that pursuant to subsection (4) of Trial Rule 69(E) it was entitled to notice and an opportunity to be heard in the proceedings supplemental. Subsection (4) provides that proceedings supplemental to execution may be enforced by verified motion or with affidavits alleging:

> [I]f any person is named as garnishee, that garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion.

The rule goes on to provide that persons who are named by the judgment creditor as garnishees are entitled to notice and an opportunity to be heard in the proceedings supplemental. The Estate did not name State Farm as a garnishee in its motion initiating the proceedings supplemental. State Farm claims this violated its right to notice and an opportunity to be heard under Trial Rule 69(E) because it is a "garnishee." State Farm's argument focuses on the "will have . . . an obligation owing" language in subsection (4) of Trial Rule 69(E). According to State Farm, in attempting to reach State Farm through assignment, the Estate assumed that State Farm had some obligation to Perkins. See T.R. 69(E) (stating that a garnishee is one who has or will have "an obligation owing the judgment debtor"). State Farm concludes that because the Estate assumed State Farm would owe an obligation to Perkins for bad faith, the Estate was required to name State Farm as a garnishee in the Estate's motion initiating a proceeding supplemental to execution.

It is true that the Estate claims State Farm has an obligation to Perkins. However, as explained above, if State Farm has a valid obligation to Perkins, it is not an obligation that is "subject to execution in a proceeding supplemental" because it cannot be reduced to judgment in a proceeding supplemental. The only matter before the proceeding supplemental court was the Estate's effort to reach property in Perkins's possession, not the resolution of Perkins's claims against State Farm. Perkins was clearly the "owner" of any claim that may exist against State Farm. Because the merits of Perkins's claim cannot be tried in a proceeding supplemental, the only property the Estate can reach in the proceeding supplemental is the contingent and

17

unliquidated tort action against State Farm. This potential tort action was Perkins's property, but it is not an obligation State Farm owed Perkins.[13] Accordingly, I believe that State Farm was not a garnishee and was not entitled under Trial Rule 69(E) to notice and an opportunity to be heard in the proceeding supplemental.

### III. Involuntary Assignment of Perkins's Claim Against State Farm

The majority holds that the "trial court's order requiring Perkins's forced assignment of his chose in action against State Farm was error." The majority seems to base this holding on (1) the fact that the assignment was involuntary and (2) that the assignment violated the direct action rule. In my view, it is of no consequence that the assignment was over Perkins's objection. Also, I do not believe that this assignment implicates the direct action rule.

A. *Involuntary Assignment*

The majority states that it was error for the trial court to force Perkins to assign his claim against State Farm but that Perkins could voluntarily assign this claim. For the following reasons, I disagree.

Trial Rule 69(E) allows the proceedings supplemental court to apply the debtor's nonexempt property to satisfaction of a judgment. Similarly, Indiana Code section 34-55-8-7 allows the proceedings supplemental court to order "any property, income, or profits of the judgment debtor . . . to be applied to the satisfaction of the judgment." The proceedings supplemental court can enforce its orders by "attachment or otherwise." Id. The court is also authorized by statute to "forbid transfers of property and choses in action" by the judgment debtor, thereby preventing the judgment debtor from engaging in fraudulent transfers and unfairly remaining judgment-proof. Id. Finally, section 34-55-8-7 grants the proceedings supplemental court continuing jurisdiction over a judgment debtor's future income, profits, and

---

[13] In the typical case, a garnishee's presence is necessary in proceedings supplemental in order for the proceeding supplemental to acquire jurisdiction over the debtor's property that is in the garnishee's possession. The garnishee's presence may also aid in the resolution of any factual disputes regarding whether the garnishee possesses the debtor's property. In this case, State Farm's presence was not needed to establish the proceeding supplemental court's jurisdiction over Perkins's bad faith claim because that claim was already in Perkins's sole possession. If the claim lacks merit, it has no value, but it is nonetheless assignable.

assets.  Id.  Any of these methods can produce an assignment that is done intentionally even if it is done in compliance with a court order and is not cheerfully or willingly done.

Neither Trial Rule 69(E) nor the statute expressly authorizes a proceedings supplemental court to order a judgment debtor to execute an assignment of the debtor's potential causes of action against third parties.  But the purpose of proceedings supplemental is to discover property and reach assets that the judgment debtor has failed or refused to apply in payment of a judgment and which cannot be reached by an ordinary execution.  Union Bank & Trust Co. v. Vandervoot, 122 Ind. App. 258, 264, 101 N.E.2d 724, 727 (1951).  Judgment debtors ordinarily appear in a proceedings supplemental court precisely because they have not voluntarily paid their creditors and will pay, if at all, only if compelled by the court.  Accordingly, although the power to compel assignment is not spelled out in so many words in the relevant statutes, the powers that are explicit and the purpose of proceedings supplemental make clear that, just as other assets may be compelled to be transferred, a proceedings supplemental court has the power to compel a judgment debtor to assign the debtor's potential causes of action against third parties.  Thus, in my view, the assignment ordered by the proceedings supplemental court was appropriate even though it was over Perkins's objection.

An assignment of a bad faith claim ordinarily arises in the context of a judgment in excess of policy limits.  Insureds not infrequently enter into voluntary assignments of potential bad faith claims against their insurers incident to settling the claims against them.  The unusual feature of this case is that the insured professes satisfaction with his insurer's performance.  If that is found to be correct, of course, the insurer will prevail in defending the bad faith claim. But I do not think that permitting an involuntary assignment is likely to be a source of frequent litigation as the majority believes.  In order to be worth spending the effort to pursue such a claim, even on a contingent fee, a bad faith claim must have some merit.  Therefore, I do not share the majority's concern that permitting involuntary assignment will be frequently invoked or costly.

The issue presented by an involuntary assignment is whether Perkins or the Estate gets to evaluate the merits of the claim and decide whether to pursue it.  For the reasons explained above, I see no basis in conventional legal doctrine to prohibit an involuntary assignment.  But if

involuntary assignments are prohibited, the effect is to give Perkins the ability to control the claim. I think it virtually certain that most insureds who are willing to deny any validity to a bad faith claim will be judgment-proof. The insured who has nothing to lose may not be the most objective evaluator of the potential claim. He may be disinclined to pursue the claim because any recovery will inure to the benefit of the injured party to satisfy the judgment. He may even be motivated by animosity towards the injured party and also may decide not to pursue it because continued litigation could be an annoyance to him with no potential net reward. For all these reasons, the insured should not be able to defeat such a claim by disavowing it any more than he can destroy any other asset to preclude the injured party from levying on it to satisfy the judgment. And I see nothing in existing rules of law that should prevent the injured party (in this case the Estate) from attempting to prove its case if it believes the claim is worth pursuing. It seems an uphill battle in the face of Perkins's avowed satisfaction with his insurer's performance, but I see no reason to deny the Estate the ability to form its own judgment on that issue.

Because I believe the trial court ruled correctly in ordering assignment of Perkins's claims against State Farm, I must address an additional argument against the assignment raised by State Farm but not addressed by the majority. State Farm argues that Perkins's potential bad faith claim is not "property" within the meaning of Trial Rule 69(E) and Indiana Code section 34-55-8-7 because it is a contingent and unliquidated claim for damages in tort. I agree that Perkins's potential claim is contingent and unliquidated. There has been no judicial finding of bad faith, fraud, or breach of contract, and Perkins may be correct in his view that there is no merit to these claims. I disagree, however, that because Perkins's potential claim is unliquidated and contingent, it is not "property" within the meaning of Indiana's statutory provisions governing proceedings supplemental to execution. Several forms of choses in action have been found to be property subject to proceedings supplemental. Most have been less speculative than an unliquidated tort claim. See, e.g., Burkett v. Bowen, 118 Ind. 379, 380-81, 21 N.E. 38, 38-39 (1889) (holding that promissory notes and mortgage owing to a judgment debtor and in the hands of a third party can be reached in proceedings supplemental); Fowler v. Griffen, 83 Ind. 297, 299 (1882) (holding that funds "and choses in action of the judgment debtor, in the hands of third parties," can be reached in proceedings supplemental); Butler v. Jaffray, 12 Ind. 427, 432-33

20

(1859) (holding that promissory notes payable to judgment debtors and fraudulently transferred to a third-party trustee can be reached in proceedings supplemental).

A judgment creditor can seek to attach whatever property a judgment debtor has. This principle is subject only to the exemption laws and is not limited to liquidated claims. A "chose in action" is the "right to receive or recover a debt, demand, or damages on a cause of action *ex contractu* or for tort or omission of a duty." Picadilly, 582 N.E.2d at 339 n.1 (quoting Black's Law Dictionary 219 (5th ed. 1979)). As such, it is an asset that may have value, however speculative. Moreover, there is specific authority for the proposition that a debtor's contingent and unliquidated cause of action against a third party is "property" that can be reached in a proceeding supplemental under Indiana law. In In re Great Lakes Steel & Fabricating Industries, Inc., 83 B.R. 1015 (Bankr. N.D. Ind. 1988), a judgment debtor had a pending counterclaim against a third party. In a state court proceeding supplemental, the judgment creditor had been allowed to attach the unliquidated and contingent counterclaim. Id. at 1017. The judgment debtor subsequently filed for bankruptcy, and the bankruptcy court upheld the validity of the proceeding supplemental attachment order, thereby giving the judgment creditor the benefit of the contingent claim at the expense of other creditors of the judgment debtor. Id. at 1021. Notwithstanding the fact that the judgment debtor's counterclaim against the third party was contingent and unliquidated, the claim was the proper subject of a proceeding supplemental attachment order. Id. The bankruptcy court found that "to hold otherwise would permit a judgment debtor to keep its choses in action judgment-proof" until the claim was settled or tried and would "render nugatory the continuing jurisdictional control" given the proceeding supplemental court by Indiana Code section 34-55-8-7. Id. at 1022. The bankruptcy court also agreed that future interests incapable of reasonable evaluation have not been subject to prejudgment attachment. This is consistent with "the general view that claims for unliquidated damages cannot be reached by attachment or garnishment process" before the party seeking attachment or garnishment has obtained a judgment against the obligee. 6 Am. Jur. 2d Attachment & Garnishment § 127 (2004). But the greater protection provided a defendant in prejudgment proceedings is not necessary in proceedings supplemental where the judgment

21

creditor's claim has already been adjudicated.  Id.[14]  I find the reasoning of the bankruptcy court in Great Lakes persuasive.  I also note that decisions from other jurisdictions are consistent with my reading of the Indiana statute permitting judgment creditors to attach "property."[15]  Accordingly, I believe that "property" in Trial Rule 69(E) and Indiana Code chapter 34-55-8 includes a judgment debtor's contingent and unliquidated tort actions.

B.  *Direct Action Rule*

The majority concludes that an "involuntary assignment of claims against carriers whose insureds do not believe they have been wronged by their insurance companies was inconsistent with the direct action rule."  For the following reasons, I disagree.

Indiana Law recognizes that an insured may assert a claim against an insurer for breach of the duty of good faith.  USA Life One Ins. Co. v. Nuckolls, 682 N.E.2d 534, 541 (Ind. 1997); Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 519 (Ind. 1993).  Indiana courts have also acknowledged causes of action brought by insureds for their insurers' failure to defend them from liability in the third-party context.  See, e.g., Gooch v. State Farm Mut. Auto. Ins. Co., 712 N.E.2d 38 (Ind. Ct. App. 1999), trans. denied; Dimitroff v. State Farm Mut. Auto. Ins. Co., 647 N.E.2d 339, 341 (Ind. Ct. App. 1995).  The Court of Appeals has explicitly refused, however, to recognize any bad faith action brought by a third-party claimant directly against the tortfeasor's insurer.  Menefee v. Schurr, 751 N.E.2d 757, 761 (Ind. Ct. App. 2001), trans. denied; Dimitroff, 647 N.E.2d at 342; Eichler v. Scott Pools, Inc., 513 N.E.2d 665, 667–68 (Ind. Ct. App. 1987).  Courts applying this so-called "direct action rule" have reasoned that insurance companies do not have a special relationship giving rise to a duty of good faith to an injured third party/judgment

---

[14] Accord McClure Oil Corp. v. Whiteford Truck Lines, 627 N.E.2d 1323, 1326 (Ind. Ct. App. 1994) (holding that contingent interest of judgment debtor as remainderman in any surplus remaining in trust account after payment of trust to the judgment debtor's creditors according to trust terms was capable of attachment in proceeding supplemental); Sandler v. Gilliland, 605 N.E.2d 1174, 1178 (Ind. Ct. App. 1993), trans. denied (holding that the contingent interest of a judgment debtor in the surplus, if any, of an escrow account created for the benefit of a judgment debtor's creditors was subject to attachment in a proceeding supplemental).

[15] In Puzzo v. Ray, 386 So. 2d 49, 51 (Fla. Dist. Ct. App. 1980), the court concluded that "property" under the Florida supplementary proceedings statute includes a debtor's cause of action for conversion against a third party. The Florida court held that a construction of the Florida statute to include a debtor's potential causes of action furthered the remedial purpose of proceedings supplemental to provide the judgment creditor a speedy and direct means to discover and claim assets that cannot readily be reached by ordinary legal process. Puzzo, 386 So. 2d 49. In Associated Ready Mix, Inc. v. Douglas, 843 S.W.2d 758, 761-62 (Tex. App. 1992), the court concluded that "property" under the Texas turnover statute includes the debtor's potential causes of action against third parties.

creditor. See Menefee, 751 N.E.2d at 760; Bennett v. Slater, 154 Ind. App. 67, 73–74, 289 N.E.2d 144, 148 (1972). Similarly, courts do not view an injured party as a third-party beneficiary of the tortfeasor's contract with the insurer. See, e.g., Hartman v. United Heritage Prop. & Cas. Co., 108 P.3d 340, 346 (Idaho 2005) (noting that the basis of the prohibition on direct actions is that the person allegedly injured by the insured is not a party to the insurance contract and has no rights under it); State Farm Mut. Auto. Ins. Co. v. Allen, 744 S.W.2d 782, 785–86 (Mo. 1988); Schmalfeldt v. N. Pointe Ins. Co., 652 N.W.2d 683, 687 (Mich. Ct. App. 2002) (stating that the insured contract benefits the insured and the injured plaintiff was "merely an incidental beneficiary of the contract who was not entitled to enforce the contract against the insurer").

The majority holds that the forced assignment violates the direct action rule by permitting the Estate, as a third party, to sue Perkins's insurer. I do not agree that the assignment implicates the direct action rule. The direct action rule is nothing more than an application of standard third-party beneficiary doctrines under contract law and a rejection of any special relationship between the insurer and a victim of the insured. To the extent policy considerations underlie the direct action rule, the concern is that permitting the insurer to be made (or to make itself) a party to the dispute between the insured alleged tortfeasor and an injured party may unfairly expose to the jury the "deep pocket" of the insurer in an action where the conduct of the insured is the issue. Allstate Ind. Co. v. Keltner, 842 N.E.2d 879, 884 (Ind. Ct. App. 2006); Rausch v. Reinhold, 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999). This concern is not presented by a claim of bad faith refusal to pay claims because in that case the conduct of the insurer itself is in issue and the insurer is properly before the court.

The assignee of an insured's bad faith claim against the insurer does not bring an independent claim or seek recognition of a duty of good faith running from the insurer to the assignee. Nor does the assignee claim to be a third-party beneficiary of the contract. Rather, the assignee merely stands in the insured's shoes and enforces the insured's claims against the insurer. See Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind. 1993). Accordingly, I do not agree that the assignment in this case authorized the Estate to bring an independent action asserting the right of a third party against State Farm. The Estate merely seeks to enforce whatever rights or claims State Farm's first-party insured could have brought. I do not express any view as to the

23

merit of such claims but believe that to the extent Perkins had a claim, it was validly assigned to the Estate.

Finally, I believe the majority is mistaken in its concern that permitting involuntary assignments will result in widespread use of that technique. Most insureds cheerfully assign bad faith claims to settle with a plaintiff who obtains a judgment in excess of policy limits. In the rare case where that does not occur, the plaintiff/judgment creditor must evaluate the risks and potential rewards of pursuing a bad faith claim on behalf of an insured when the insured professes satisfaction with the insurer's performance. The practical barriers to such a claim will deter many if not most such claims. I would permit the Estate to take its chances.

Dickson, J., joins.